MARTIN v DEPARTMENT OF CORRECTIONS

Docket No. 75939. Argued December 19, 1985 (Calendar No. 14).— Decided March 28, 1986.

Morris Martin, an inmate of the State Prison of Southern Michigan, brought an action in the Ingham Circuit Court against the Department of Corrections, seeking a declaration that the department's directives for imposing penalties upon prison inmates for major misconduct violations were not properly promulgated as rules under the Administrative Procedures Act. The court, Robert H. Bell, J., granted summary judgment for the defendant, holding that prison misconduct regulations need not be so promulgated because prisoners are not members of the general public for purposes of the act. The Court of Appeals, DANHOF, C.J., and HOOD, J. (SHEPHERD, J., concurring), reversed in an opinion per curiam (Docket No. 71040). The defendant appeals.

In an opinion by Chief Justice WILLIAMS, joined by Justices LEVIN, BRICKLEY, and RILEY, the Supreme Court *held:*

The disciplinary directives adopted by the Department of Corrections for imposing penalties upon prison inmates for major misconduct violations were not properly promulgated as rules under the Administrative Procedures Act.

The Administrative Procedures Act applies to all agencies and agency proceedings unless expressly exempted. The Department of Corrections is an agency for purposes of the APA, and its directives governing prison disciplinary proceedings have not been expressly exempted from the act's rulemaking provisions. Intergovernmental, interagency, or intra-agency memoranda, directives, or communications which do not affect the public are exempt from the rulemaking requirements of the act. However, the Legislature, in enacting the APA, did not

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Penal and Correctional Institutions §§ 41-45.

Applicability of Administrative Procedure Act (5 USCS §§ 551 *et seq.*) to federal prison disciplinary procedures. 39 ALR Fed 808.

Relief, under Federal Civil Rights Act, to state prisoners complaining of conditions relating to corporal punishment, punitive segregation, or other similar physical disciplinary measures. 18 ALR Fed 7.

intend to include the department's disciplinary provisions within that exception, as evidenced by the enactment of certain statutes directing the department to promulgate rules pursuant to the APA, by the amendment of the APA to exempt prison disciplinary hearings from the contested-case provisions of the act, and by the failure to expressly exempt the department from the rule-promulgation requirements of the act.

Affirmed.

Justice CAVANAGH, joined by Justice BOYLE, dissenting, stated that this directive, involving internal disciplinary processing of inmates, should not be subject to the rulemaking requirements of the Administrative Procedures Act. Although inmates of correctional institutions are members of the public in a general sense, the rights of, and procedures and practices available to, inmates are severely restricted while they are incarcerated. The rulemaking requirement of the APA, which compels agencies to give notice of a public hearing and receive public input on proposed rules, was meant to apply to the public at large, and is clearly inappropriate in a prison setting where internal disciplinary directives are involved.

Justice ARCHER took no part in the decision of this case.

140 Mich App 323; 364 NW2d 322 (1984) affirmed.

OPINION OF THE COURT

1. PRISONS AND PRISONERS — ADMINISTRATIVE LAW — ADMINISTRA-
TIVE PROCEDURES ACT — DEPARTMENT OF CORRECTIONS — DISCI-
PLINARY RULES.

The Department of Corrections is not exempt from the rulemak-
ing requirements of the Administrative Procedures Act in
promulgating disciplinary directives for imposing penalties
upon prison inmates for major misconduct violations (MCL
24.201 *et seq.;* MSA 3.560[101] *et seq.*).

DISSENTING OPINION BY CAVANAGH, J.

2. PRISONS AND PRISONERS — ADMINISTRATIVE LAW — ADMINISTRA-
TIVE PROCEDURES ACT — DEPARTMENT OF CORRECTIONS — DISCI-
PLINARY RULES.

*Adoption of a Department of Corrections directive which involved
internal discipline of prison inmates should not have been
subject to the rulemaking requirement of the Administrative
Procedures Act which compels notice of a public hearing and
reception of public input on proposed rules; the requirement
was meant to apply to the public at large and is clearly
inappropriate in a prison setting (MCL 24.201 et seq.; MSA
3.560[101] et seq.).*

Morris Martin, *in propria persona,* and Prison Legal Services of Michigan, Inc. (by *Ronald E. Steinberg*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas C. Nelson,* Assistant Attorney General, for the defendant.

WILLIAMS, C.J. The issue in this case arises from the challenge of a prison inmate to the disciplinary directives of the Department of Corrections as not being properly promulgated as rules pursuant to the Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* The department defended its disciplinary provisions as being subject to an exception to the rulemaking requirements of the APA for

> [a]n intergovernmental, interagency or intra-agency memorandum, directive or communication which does not affect the rights of, or procedures and practices available to, the public. [MCL 24.207(g); MSA 3.560(107)(g).]

The narrow question we decide today is whether, in granting summary judgment, the trial court correctly held that inmates are not members of the "public" for purposes of the APA, and the department thus acted with proper authority; or whether the Court of Appeals was correct in holding that prison inmates are members of the "public" under the APA and the department therefore did not come under the quoted exception to the APA procedural requirements. We affirm the decision of the Court of Appeals.

## I. FACTS

Plaintiff, Morris Martin, an inmate of the State Prison of Southern Michigan in Jackson, brought

an action in Ingham Circuit Court, seeking a declaratory judgment to determine the validity and applicability of an agency rule and to review an adverse and final decision by the Department of Corrections. MCL 24.264, 24.301; MSA 3.560(164), 3.560(201).[1] The trial court granted defendant's motion for summary judgment, holding that prison misconduct regulations need not be promulgated as rules under the APA because prisoners are not members of the "general public" and hence within the quoted exception to APA requirements. The Court of Appeals reversed, finding that this Court's decision in *Green v Dep't of Corrections*, 386 Mich 459; 192 NW2d 491 (1971), led to a conclusion that prisoners are members of the public for purposes of the APA.[2]

## II. CORRECTIONS IS AN AGENCY COVERED BY APA

Section 113 of the APA states that it applies to "all agencies and agency proceedings not expressly exempted." MCL 24.313; MSA 3.560(213). The Department of Corrections is not expressly exempted from the APA. We therefore agree with the Court of Appeals holding in *Human Rights Party v Corrections Comm*, 76 Mich App 204, 208; 256 NW2d 439 (1977), *lv den* 402 Mich 906 (1978), that the corrections department is an "agency" for purposes of the APA. Furthermore, prison discipli-

---

[1] Although plaintiff's complaint did not refer to any specific misconduct, the Court of Appeals stated that Martin was apparently disciplined for "substance abuse." *Martin v Dep't of Corrections*, 140 Mich App 323, 325; 364 NW2d 322 (1985). Plaintiff's counsel at oral argument stated that plaintiff was disciplined for possession of one marijuana "joint."

[2] In *Kirkeby v Dep't of Corrections*, 141 Mich App 148; 366 NW2d 28 (1985), another panel of the Court of Appeals reached the opposite conclusion. Pursuant to Administrative Order No. 1984-2, the *Kirkeby* panel certified that its decision conflicted with the decision in *Martin*. This Court granted leave to appeal in both cases, 422 Mich 879, 880 (1985). Plaintiff in *Kirkeby* has not filed an appellate brief.

nary proceedings have not been expressly exempted from the act's rulemaking provisions.

### III. APA RULE REQUIREMENTS AND THE "NONPUBLIC" EXCEPTION

The APA requires administrative agencies to follow certain specified procedures for promulgating rules, including the requirements of notice and hearing. MCL 24.241; MSA 3.560(141). The APA defines a rule as follows:

> "Rule" means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof, but does not include the following:
>
> * * *
>
> (g) An intergovernmental, interagency or intra-agency memorandum, directive or communication which does not affect the rights of, or procedures and practices available to, the public. [MCL 24.207(g); MSA 3.560(107)(g).]

Defendant Department of Corrections contends that rules which affect only inmates are subject to the above exception and thus exempt from the rulemaking requirements of the act because inmates are not members of the "public."[3]

---

[3] In spite of its present contention that the APA does not require the promulgation of rules governing inmate misconduct, the department has in fact promulgated, pursuant to the APA, a number of rules relating to resident misconduct. 1979 AC, R 791.5501 et seq. In one of these rules, "major misconduct" is defined as follows:

"(a) Escape or attempt to escape.

"(b) Behavior that constitutes a felony under state or federal law.

"(c) Serious insubordination as defined in resident guide book.

"(d) Assault or threat of violence.

"(e) Repeated rule violations as defined in resident guide book.

## IV. The *Green* Tort Decision

In *Green v Dep't of Corrections, supra,* 464, this Court expressly adopted the language of the Court of Appeals which stated:

> [P]laintiff is a member of the public community whether in or out of jail. The difference being that

"(f) A violation of rules that clearly jeopardizes facility security or safety as defined in resident guide book." 1979 AC, R 791.5501(2).

Although "substance abuse" is not specifically listed as major misconduct, the department's Resident Guidebook (referred to in sections [c], [e] and [f]) defines "substance abuse" as a "major rule violation." Plaintiff charges that the Resident Guidebook cannot be adopted by reference in the rules because of the following APA provision:

"An agency may adopt, by reference in its rules and without publishing the adopted matter in full, all or any part of a code, standard or regulation which has been adopted by an agency of the United States or by a nationally recognized organization or association. The reference shall fully identify the adopted matter by date and otherwise. The reference shall not cover any later amendments and editions of the adopted matter, but if the agency wishes to incorporate them in its rule it shall amend the rule or promulgate a new rule therefor. The agency shall have available copies of the adopted matter for inspection and distribution to the public at cost and the rules shall state where copies of the adopted matter are available from the agency and the agency of the United States or the national organization or association and the cost thereof as of the time the rule is adopted." MCL 24.232(4); MSA 3.560(132)(4).

The department has also issued a policy directive, designated PD-DWA 60.01, which outlines disciplinary procedures and was promulgated as a guideline under the APA. The APA defines a guideline as:

"[A]n agency statement or declaration of policy which the agency intends to follow, which does not have the force or effect of law, and which binds the agency but does not bind any other person." MCL 24.203(6); MSA 3.560(103)(6).

PD-DWA 60.01 lists "substance abuse" as a major rule violation. Plaintiff charges that PD-DWA 60.01 cannot be employed in disciplining inmates because it has not been promulgated as a rule. The APA prohibits the adoption of a guideline in lieu of a rule. MCL 24.226; MSA 3.560(126).

Rather than defending the validity of its rules, the department chose to argue that promulgation of rules was unnecessary since plaintiff was not a member of the public. At oral argument, defendant's attorney stated that promulgation of PD-DWA 60.01 as a guideline under the APA was "gratuitous."

> when incarcerated, he is prevented, by law, from exercising the rights and privileges he enjoyed as a free member of society. [30 Mich App 648, 654; 186 NW2d 792 (1971).]

The issue in *Green* was whether an inmate injured in the Detroit House of Corrections could recover damages pursuant to the "public building" exception to governmental immunity.[4] The Court of Appeals was of the opinion that the above language compels a similar finding in this case. We do not agree. A finding that an inmate is a member of the public for purposes of tort liability does not necessarily lead to a conclusion that the word "public" as used in the APA includes prisoners.[5] See *Fletcher v Employment Security Comm,* 355 Mich 278, 282; 94 NW2d 78 (1959). To make this determination, we must attempt to ascertain legislative intent. *Aikens v Dep't of Conservation,* 387 Mich 495, 499; 198 NW2d 304 (1972).

## V. LEGISLATION REQUIRING CORRECTIONS TO PROMULGATE APA RULES

The Legislature has enacted a number of statutes directing the Department of Corrections to promulgate rules pursuant to the APA, indicating an intent that the department generally at least is subject to APA requirements. Several of these statutes deal directly with inmate rights.

MCL 791.262(3); MSA 28.2322(3) directs the de-

---

[4] MCL 691.1406; MSA 3.996(106).

[5] In *Prisoners' Labor Union v Dep't of Corrections,* 61 Mich App 328; 232 NW2d 699 (1975), *lv den* 394 Mich 843 (1975), the Court of Appeals held that inmates are not "public employees" within the meaning of the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* The Court based its conclusion on a finding that the relationship between the inmates and the Department of Corrections is not primarily an employment relationship. The Court expressed no opinion regarding whether prisoners are members of the public.

partment to promulgate rules under the APA to promote the "proper, efficient and humane" administration of jails and lockups under the jurisdiction of the county sheriff.

MCL 791.265c(10); MSA 28.2325(3)(10) directs the department to promulgate rules under the APA to establish criteria to determine prisoner eligibility for participation in programs of paid employment in the community.

MCL 791.254(4); MSA 28.2320(54)(4) directs the department to promulgate rules under the APA to implement the procedures in rehearings involving prisoner misconduct hearings.

MCL 791.206(1)(d); MSA 28.2276(1)(d) requires the director of the department to promulgate rules under the APA "[f]or the management and control of state penal institutions . . . ."

A number of these directives apply to rules which would affect *only* prisoners. Additionally, the directive of MCL 791.206(1)(d); MSA 28.2276(1)(d) to promulgate rules for the management and *control* of state penal institutions would appear to include, by definition, rules governing the discipline of inmates. We believe the import of these statutes mandating rulemaking is that the Legislature regards a regulation which affects only inmates as being within the definition of a "rule" as defined by the APA.

## VI. PERTINENT LEGISLATIVE ACTION AND INACTION REGARDING INMATES

The Legislature's intention to include inmates within the purview of the APA rules is suggested in two other ways. In one instance, the Legislature immediately enacted a specific APA exception when the Court of Appeals held that a prison disciplinary proceeding is a contested case under the APA.

In another, when the Model State APA was revised to include a specific exemption from APA procedures for rules affecting prisoners, the Legislature did not similarly amend the Michigan APA.

In *Lawrence v Dep't of Corrections,* 88 Mich App 167; 276 NW2d 554 (1979), the Court of Appeals held that a prison disciplinary proceeding is a "contested case" within the meaning of the APA. The same year, the Legislature enacted 1979 PA 139, which amended the APA and expressly exempted prison disciplinary hearings from the contested case provisions of the act. MCL 24.315; MSA 3.560(215).

In many respects, the Michigan Administrative Procedures Act closely parallels the Model State Administrative Procedures Act drafted by the National Conference of Commissioners of Uniform State Laws. 14 ULA 1-101 *et seq.* The Model Act was redrafted in 1981, however, and now contains a section specifically exempting certain types of rules from formal promulgation requirements. In addition to exempting

> a rule concerning only the internal management of an agency which does not directly and substantially affect the procedural or substantive rights or duties of any segment of the public [§ 3-116(1),]

the Model Act exempts

> a rule concerning only inmates of a correctional or detention facility, students enrolled in an educational institution, or patients admitted to a hospital, if adopted by that facility, institution, or hospital [§ 3-116(6).]

We need not decide whether a provision similar to the Model Act if it were incorporated in the Michigan act, would serve to exempt the rules at issue

here from the promulgation provisions of the Michigan APA. We only note that the drafters of the Model Act found it necessary to enact a specific exemption for inmates in spite of the provision exempting rules which do not affect the "public." Our Legislature has not chosen to adopt a similar provision.

In view of the APA's requirement of an express exemption, the example of the Model State Administrative Procedures Act in expressly exempting inmates and the lawmakers' timely action exempting the department from the APA's contested-case requirements in prison misconduct cases, we are persuaded that, had the Legislature intended to exempt the department from the duty to promulgate rules pursuant to the APA covering prison discipline, it would have enacted a provision similar to the express exemption in the Model Act.

## VII. PUBLIC INTEREST AND INPUT

The department contends that the purpose of a promulgation requirement is to provide for public input in the rulemaking process. Since the department argues that rules of prison discipline affect only that restricted population, it believes that comment by the general public would be of little benefit. This belief seems to overlook the obvious public concern of humanitarian and civil rights groups. Furthermore, it completely overlooks the concern of the Legislature. In *Spruytte v Walters,* 753 F2d 498 (CA 6, 1985), the United States Court of Appeals for the Sixth Circuit held that a Michigan Department of Corrections policy directive which limited inmates to receiving only books sent by publishers was invalid because it conflicted with a rule promulgated pursuant to the APA which allowed inmates to receive any book which

did not present a threat to the order or security of the institution.[6] The court stated:

> Agency compliance with the provisions of the APA is particularly important because all proposed rules are subject to the approval of the Michigan legislature. A proposed rule must be submitted to a legislative joint committee on administrative rules. *See* MCL 24.245(2) [MSA 3.560(145)(2)]. If the joint committee disapproves the proposed rule or is at an impasse after two months of considera-

---

[6] The *Spruytte* court did not reach the precise question we consider here. Faced with a claim that inmates are not members of the public, and that the challenged directive therefore was exempt from the promulgation requirement, the court noted that the right of noninmates to mail materials into the prison was also affected, citing a similar holding in *Schinzel v Dep't of Corrections,* 124 Mich App 217; 333 NW2d 519 (1983). The court further noted:

"A section 1983 claim adjudicated in federal court may be the only means of conclusively determining the correct interpretation of the Administrative Rule and the Policy Directive. The course of the litigation in the Marquette Circuit Court indicates that the Department of Corrections may be committed to a policy of preventing state appellate court adjudication of the controversy. The Department's strategy apparently has been to enforce its Policy Directive despite court orders from the Marquette Circuit Court. Thus, a prisoner must litigate every time he wants to receive a book from a source other than a publisher.

"The Marquette Circuit Court's contempt citations have been directed at the Department of Corrections rather than individual officers. The court has been reluctant to cite the individual officers because they are operating under the Department's Policy Directive. Of course, the court cannot incarcerate the Department of Corrections and a fine is ineffective because the result would be mere transfer of funds from one state agency to another. Because the Marquette Circuit Court is without an effective remedy, the Department of Corrections has chosen to ignore the circuit court orders. To insulate its actions from review by the state's appellate courts, the Department refuses to appeal the circuit court's contempt citations, despite the pleas of the circuit judge: 'I strongly suggest to the Department that they either appeal this present order, in order that the relationship between the Policy Directive and the Administrative Rule can be clarified, or initiate procedures under the Administrative Procedure Act to have an amendment to the Administrative Code rule. . . . If such an amendment is not that vital [to the order or security of the prison], the defendant Department should honor this and the prior orders of this court. . . .' *Mithrandir v Michigan Dep't of Corrections,* No. 11531, slip op at 3 (Marquette Cir Ct Feb 11, 1983)." *Spruytte, supra,* 502-503.

tion, the agency may not adopt the rule unless it is subsequently approved by a concurrent resolution of the legislature or by further action of the joint committee. *See* MCL 24.245(6) [MSA 3.560(145)(6)]. Thus, the question whether the Policy Directive may be adopted without compliance with the APA is more than a mere question of notice and hearing requirements; it is a question of the allocation of decisionmaking authority. [*Id.,* 503.]

## VIII. RULE FLEXIBILITY

Finally, the Department of Corrections argues that the management of prison discipline requires flexibility in response to changing circumstances and the inventiveness of inmates. Requiring every disciplinary rule change to go through a lengthy rulemaking process would, according to this view, endanger prison security. We are not unsympathetic to the necessity for flexibility, but we observe that the APA provides for emergency rules which may be made effective without prior notice and hearing procedures and may remain in effect for up to one year. MCL 24.248; MSA 3.560(148).

## IX. CONCLUSION

For all of the above reasons, we are compelled to conclude that the Legislature, in enacting the APA, did not intend to include disciplinary provisions adopted by the Department of Corrections as "an intergovernmental, interagency or intra-agency directive or communication which does not affect the rights of, or procedures and practices available to, the public" and consequently excluded from APA requirements. Therefore, while we do not adopt the rationale of the Court of Appeals, we affirm their decision that the disciplinary directives of the Department of Corrections were not properly

promulgated as rules pursuant to the Administrative Procedures Act.

LEVIN, BRICKLEY, and RILEY, JJ., concurred with WILLIAMS, C.J.

CAVANAGH, J. (*dissenting*). Resident inmates are obviously members of the public in a general sense. However, MCL 24.207(g); MSA 3.560(107)(g) exempts directives which do not affect the *rights of,* or the *procedures* and *practices available to,* the public. The rights of, and procedures and practices available to, inmates are severely restricted while they are incarcerated. Thus, although inmates are members of the public in a general sense, I believe that a contrary result must be reached for the purposes of the rulemaking requirement of the APA. I cannot conclude that the Legislature intended this requirement to apply to Policy Directive 60.01, which only involves the internal disciplinary processing of inmates.

I

The majority fails to interpret MCL 24.207(g); MSA 3.560(107)(g) in light of the overall goals of the APA. The prefatory note to the 1981 Model Act[1] states:

> This Model Act, like the 1961 Revised Model Act, creates only procedural rights and imposes only procedural duties. It seeks to simplify government by assuring a uniform minimum procedure to which all agencies will be held in the conduct of their functions. *Further, this act seeks to increase public access to all of the sources of law used by agencies,* and to facilitate and encourage the issu-

---

[1] I agree with the majority that Michigan's APA closely parallels the Model State APA.

ance of reliable advice by agencies as to the applicability to particular circumstances of law within their primary jurisdiction. In addition, *it attempts to facilitate public participation in the formulation of the law adopted by agencies, ensure accountability of agencies to the public,* and enhance legislative and gubernatorial oversight of agencies. [14 ULA, 1986 supp, p 70. Emphasis supplied.]

These goals are furthered by the rulemaking requirement, which compels agencies to give notice of a public hearing and receive public input on proposed rules.

However, there are a number of statutory exemptions to the rulemaking requirement. In analyzing the underlying purpose of the exemptions, Professor Bonfield (a noted commentator whose work is cited extensively in the comments to the Model Act) states:

These exemptions consequently represent an effort to strike a fair balance between the need to increase public participation in the rulemaking process on the one hand, and the conflicting need for efficient, economical, and effective government on the other hand. In the case of each one of these exemptions, it was determined that subjecting the particular statements in question to rulemaking procedures was either unnecessary, unduly burdensome on the agencies, or would lead to inefficient or ineffective government. [Bonfield, *The Iowa administrative procedure act: Background, construction, applicability, public access to agency law, the rulemaking process,* 60 Iowa L R 731, 832 (1975).]

Bonfield also analyzed the purpose of the public rights exemption, Iowa APA, § 2(7)(c), which is similar[2] to the one addressed today:

_____

[2] The Iowa exemption states that "[a]n intergovernmental, intera-

This provision also strikes a proper balance between the agencies' need to conduct their own internal affairs without being excessively burdened by rulemaking requirements, and the public's need to assure an adequate opportunity for public participation in agency lawmaking. [*Id.,* p 835.]

Taken in this context, I believe that the "public participation" envisioned by the Michigan APA was that of the public at large, or in this case, the non-inmate population. The rulemaking requirement was meant

to assure that rule-making determinations are democratic as well as technocratic—that the body politic may effectively thwart the adoption of rules, no matter how technically sound and lawful, that are politically unacceptable to the community. [14 ULA, 1986 supp, p 87.]

This purpose is clearly inappropriate in a prison setting and indicates further that resident inmates were not intended to come within its ambit.

II

Section VI of the majority opinion states that legislative action and inaction suggest an intent to include resident inmates within the APA.

However, legislative action since *Lawrence v Dep't of Corrections,* 88 Mich App 167; 276 NW2d 554 (1979), evidences a general intent to *exclude* the prison disciplinary process from the strict requirements of the APA. 1979 PA 139 and 1979 PA 140 set up a special hearing procedure for

gency, or intra-agency memorandum, directive, manual or other communication which does not substantially affect the legal rights of, or procedures available to, the public or any segment thereof" is not a "rule." Iowa Code Ann, § 17A.2(7)(c).

inmates.[3] Prior to the enactment of those acts, the House Legislative Analysis Section stated:

> *Many people feel that some of the A.P.A. requirements are inappropriate to the prison disciplinary hearings process.* For example, they fear that allowing prisoners to know the identity of witnesses testifying against them could endanger the witness in some cases. *The added cost of complying with the A.P.A. requirements, estimated at $1.4 million, is another concern.* In response to these considerations, the exemption of prison disciplinary hearings from the Administrative Procedures Act has been advocated. [Analysis of HB 4105 and HB 4480, June 19, 1979. Emphasis supplied.]

This evidences the Legislature's concern for overburdening the department with the technical, time-consuming, and expensive requirements of the APA. The Legislature has, from time to time, chosen to impose the rulemaking requirements on the department. Nonetheless, in *this* instance, I cannot conclude that this policy directive should be similarly burdened. There is no express requirement imposed on the day-to-day operations of the disciplinary process.

I submit that legislative *inactivity* since *Lawrence, supra,* is meaningless. The absence of a more specific provision dealing with educational, health, *and* correctional institutions (as found in the Model Act), does not necessarily indicate that the Legislature was aware of the 1981 revision, yet made a conscious decision to disregard it. Instead, reaction to *Lawrence,* which occurred prior to the Model Act's revision in 1981, indicates that the Legislature was cognizant of the department's unique operational responsibilities.

---

[3] Plaintiff was disciplined in accordance with this procedure.

### III

The majority also fails to give sufficient consideration to the practical effects of its decision. To a great extent, the department's daily operations are controlled by intra-agency memoranda, directives, and other communications. If inmates are members of the public for purposes of the rulemaking requirement, then conceivably every memorandum which affects prisoners must be promulgated. Such an interpretation effectively renders the exemption meaningless.

The better rule, and one that has been enforced in the past, would require promulgation of those rules which affect the non-inmate public. For example, in *Schinzel v Dep't of Corrections,* 124 Mich App 217; 333 NW2d 519 (1983), the Court focused on the actual action taken by the directive to determine if it affected the members of the public at large. The Court required a rule to be promulgated, because members of the general public (*i.e.,* family and friends) were deprived of practices (sending stamps to inmates) which they would otherwise enjoy. *Id.,* p 219.

*Spruytte v Walters,* 753 F2d 498 (CA 6, 1985), dictates a similar result. The policy directive at issue in that case involved a mother's right to send a book to her inmate son. Although not dispositive of the case, the court correctly noted that since the public's rights (*i.e.,* the mother's) were affected, the directive had to be published as a rule. *Id.,* p 504.

In contrast, Martin was disciplined under a policy directive which only affects the rights of the inmate population. I do not believe that this portion of the internal disciplinary process was meant to be subjected to the rulemaking requirement of the APA.

Nor am I persuaded that the "emergency rules" noted by the majority will relieve any burden. In view of the time-consuming nature of the rulemak-

ing process,[4] which includes submission to the Legislature for approval, I seriously doubt that those rules will benefit the department.

## IV

The plaintiff must have been aware of the fact that possession of marijuana—a crime itself—was also a violation of prison rules. The Legislature has enacted several measures to assure that inmates are afforded basic rights. However, the rule-making requirement of the APA looks *outward* for input from those outside the particular agency.[5] While in prison, an inmate's right to participate in the public process is severely limited. The right to vote—perhaps the most basic right enjoyed by members of the public—is taken away. Accordingly, I do not believe that the Legislature intended to grant inmates the identical level of participation in the disciplinary process as that granted to the non-inmate population.

BOYLE, J., concurred with CAVANAGH, J.

ARCHER, J., took no part in the decision of this case.

[4] See *Processing of administrative rules in Michigan,* 63 Mich B J 1024-1029 (1984).

[5] See Bonfield, *supra,* p 834.