Jeffery SANDERS, Plaintiff,

v.

Gene BORGERT, Everett Elkins, Kenny Robinson, A. Gneiting, T. Bennett, and C/O Grier, Defendants.

Civ. A. No. 86–70241.

United States District Court,
E.D. Michigan, S.D.

April 13, 1989.

Jeffery Sanders, pro se.

E. Michael Stafford and Barbara Schmidt, Asst. Attys. Gen., Corrections Div., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff, Jeffery Sanders, is incarcerated at the Huron Valley Men's Facility ("HVMF") in Ypsilanti, Michigan. Sanders seeks damages under 42 U.S.C. § 1983 from various HVMF officials who allegedly violated his constitutional rights. Shortly before this bench trial, Sanders dismissed his second appointed counsel, choosing to continue on a pro se basis. Sanders also explicitly waived his right to a jury trial. After I carefully explained this right to him on the record, Sanders signed a written waiver of jury trial and confirmed this waiver on the record. I have jurisdiction based on 28 U.S.C. § 1343(3).

Sanders presents four main contentions. First, he alleges that he did not receive the constitutionally required notice of several major misconduct charges made against him in October, 1985. He also alleges that he did not receive notice of the hearings held on these charges. Second, he argues that the violations of which he was convicted, disobeying a direct order and being out of place, do not constitute major misconducts under the Michigan Department of Correction's ("MDOC") rules. For present purposes I will assume that this issue rais-

es a federal question.[1] Finally, Sanders claims that when HVMF officials changed his security classification and forfeited his good time because of his misconduct convictions, they violated his constitutional right by not giving him hearings on these specific matters.

Plaintiff has sued: (1) Gene Borgert, the warden who reduced his good time; (2) Everett Elkins, and (3) Kenny Robinson, deputy wardens who, as members of the HVMF security classification committee, reclassified him to administrative segregation from the general population; and (4) Patricia Grier, a corrections officer who filed some of the challenged misconduct charges. Two other defendants, Gneiting and Bennett, were dismissed from the case.

Defendants claim that Sanders did receive timely notice of both the misconduct charges and the hearings held on those charges. They assert that *Walker v. Mintzes,* 771 F.2d 920 (6th Cir.1985), controls plaintiff's last two claims, and that § 1983 liability cannot arise because these defendants had no personal involvement in the alleged constitutional violations. Alternatively, defendants claim a qualified immunity from all of plaintiff's claims.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A. *Lack of Notice Claim*

■ I find that plaintiff has failed to prove that he did not receive adequate notice of the misconduct charges or of the hearings on those charges. Plaintiff only presented his own testimony to support these allegations. Defendants marshalled at least seven witnesses, including HVMF hearings officers and corrections officers, who testified that Sanders did receive notice.

Defendants also produced records of the notice plaintiff received. Defendants' trial exhibits 2, 3, 4, 7, 8, 9 and 11 each contain a major misconduct report detailing a violation by plaintiff in October, 1985.[2] A corrections officer signed each report, stating that either the officer had reviewed the charge with plaintiff, or that plaintiff had refused to attend a review. Defendants' exhibits 5, 6, 10 and 12 are prison passes and a memorandum, documenting either plaintiff's movement to a ticket review, or his refusal to attend a review. A corrections officer also noted on each misconduct report that plaintiff refused to sign the report, but that he had received a copy of the report. Each report notified plaintiff that a hearing would be held later on that charge.

Defendants attached a misconduct hearing report to each misconduct report. The officer conducting each hearing noted on every report that plaintiff had been summoned for the hearing but refused to attend. The officer also identified the corrections officers who summoned plaintiff, the time he was summoned, the evidence and reasoning relied on, and the verdict. In the face of defendants' documentation and witness testimony, plaintiff's testimony that he did not receive notice does not meet his burden of proof on this first contention.

#### B. *Definition of Major Misconduct Claim*

Plaintiff's second contention is based on two definitions of major misconduct adopted by the Michigan Department of Corrections ("MDOC"). One definition states that:

---

1. I realize that 28 U.S.C. § 1331 jurisdiction over this second issue may be questioned, particularly in light of decisions such as *Walker v. Mintzes,* 771 F.2d 920 (6th Cir.1985). Because this plaintiff proceeds pro se, however, I will discuss this issue.

2. The following table summarizes the notification dates recorded in each exhibit:

| Exhibit No. | Violation Date | Date of Charge Review (Plaintiff Notified of Charge and Hearing) | Hearing Date |
|---|---|---|---|
| 2 | 10–15–85 | 10–16–85 | 10–30–85 |
| 3 | 10–22–85 | 10–23–85 | 11–6–85 |
| 4 | 10–22–85 | 10–23–85 | 11–6–85 |
| 7 | 10–23–85 | 10–24–85 | 11–6–85 |
| 8 | 10–24–85 | 10–25–85 | 11–6–85 |
| 9 | 10–24–85 | 10–25–85 | 11–6–85 |
| 11 | 10–24–85 | 10–25–85 | 11–6–85 |

(2) A resident alleged to have committed the following behavior shall be charged with major misconduct:

(a) Escape or attempt to escape.

(b) Behavior that constitutes a felony under state or federal law.

(c) Serious insubordination as defined in resident guide book.

(d) Assault or threat of violence.

(e) Repeated rule violations as defined in resident guide book.

(f) A violation of rules that clearly jeopardizes facility security or safety as defined in resident guide book.

III *Michigan Administrative Code* Rule 791.5501(2) at page 5156 (1979).[3]

The definition under which plaintiff was charged and convicted contains a more detailed list of activities constituting major misconduct. Plaintiff was convicted of the following violations:

020 *Disobeying a direct order*—Refusal or failure to follow a valid, reasonable order.

and

036 *Out of place or bounds/AWOL*— Being anywhere without the proper authorization; being absent from where required to be; breaking "to-plock" without authorization.

Michigan Department of Corrections Policy Directive PD–DWA–60.01. Subject: Prisoner Disciplinary Policy.

■ Plaintiff argues that PD–DWA–60.-01 is not authoritative and, therefore, he did not commit major misconduct by disobeying direct orders or by being out of place. The Michigan Supreme Court has invalidated policy directive 60.01. *Martin v. Michigan Department of Corrections*, 424 Mich. 553, 384 N.W.2d 392 (1986). The court held that the Department of Corrections had to follow the Administrative Procedures Act, M.C.L. § 24.201 *et seq.*, but failed to do so when it adopted PD–DWA–60.01. However, a subsequent *Martin* decision gives only partial retroactive effect to the Michigan Supreme Court's decision.

*Martin v. MDOC*, 168 Mich.App. 647, 425 N.W.2d 205 (1988). Only those misconduct charges pending on or after March 28, 1986 may now be challenged under *Martin*. *Id.*

Because Sanders' charges were not pending on March 28, 1986, the invalidation by *Martin* of PD–DWA–60.01 does not apply here. Sanders' charges and convictions occurred in October and November, 1985. He did not appeal these convictions. This § 1983 action is not a direct appeal, and so does not meet the "pending" requirement. At the time of Sanders' charges and convictions, PD–DWA–60.01 validly defined major misconduct.

### C. Due Process Claims

Sanders makes two further claims. The first arises from defendant Robinson's testimony that the security classification committee administratively segregated plaintiff because he received three major misconduct convictions within ninety days. Plaintiff argues that the fourteenth amendment due process requirement entitles him to a hearing specifically on the segregation issue. Second, defendant Borgert reduced plaintiff's good time on three occasions, based on plaintiff's major misconduct convictions. Plaintiff argues that Borgert should not have made this decision until plaintiff received a hearing specifically on the forfeiture issue. Sanders argues that due process requires not only an initial hearing regarding a commission of major misconduct, but also separate hearings on whether administrative segregation and good-time forfeiture should occur.

Policy statements and other promulgations by state prison officials may create liberty interests protected by the fourteenth amendment. *Bills v. Henderson*, 631 F.2d 1287, 1291 (6th Cir.1980), *citing Walker v. Hughes*, 558 F.2d 1247, 1255 (6th Cir.1977). In particular:

Where statutes or prison policy statements have limited prison officials' discretion by imposing a specific prerequisite to the forfeiture of benefits or favor-

---

**3.** This rule was amended in *Michigan Administrative Code*, 1987 Annual Supplement, Rule 791.5501(1) at page 756.

able living conditions enjoyed by a prisoner, an expectation or entitlement has been created which cannot be taken away without affording the prisoner certain due process rights.

*Bills v. Henderson, supra,* 631 F.2d at 1293. These policies and promulgations must also use mandatory language to require their substantive predicates, rather than giving discretionary guidelines for decision making. *Hewitt v. Helms,* 459 U.S. 460, 471–472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). *See also Thompson v. Commonwealth of Kentucky, Department of Corrections,* 833 F.2d 614, 618–619 (6th Cir.1987), *U.S. App. Pending,* — U.S. ——, 108 S.Ct. 2869, 101 L.Ed.2d 905.

MDOC regulations create protected liberty interests in this case. Rule 791.4405 defines the circumstances under which segregation may be imposed:

> (1) Segregation may be imposed only for 1 or more of the following reasons:
>
> (a) A prisoner demonstrates an inability to be managed with general population privileges.
>
> (b) A prisoner needs protection from other prisoners.
>
> (c) A prisoner is a serious threat to the physical safety of staff or other prisoners or to the good order of the facility.
>
> (d) A prisoner is a serious escape threat.
>
> (e) A prisoner is under investigation by outside authorities for suspected felonious behavior.

III *Michigan Administrative Code,* Rule 791.4405 at page 5152 (1979).

This rule creates a protected liberty interest. *See Walker v. Mintzes,* 771 F.2d 920, 933–934 (6th Cir.1985), and *Walker v. Johnson,* 544 F.Supp. 345, 352 (1982). Its mandatory language does not merely channel official discretion, but limits that discretion. Under Rule 791.4405, a prisoner has a protected interest in not being segregated unless he meets one of the five enumerated criteria.

■ However, in 1980 MDOC's director circulated a policy memorandum stating that an inmate could be transferred to administrative segregation upon a finding that he engaged in major misconduct. *Walker v. Mintzes, supra,* at 933. The United States Court of Appeals for the Sixth Circuit held that if this memorandum is valid, no federal rights are implicated. *Id.* at 934. Since the state has the power to define the interest which the fourteenth amendment protects, this memorandum effectively added to Rule 791.4405 a reason for which segregation could be imposed.

The 1980 memorandum narrowed the previous Rule 791.4405 interest. Inmates now have an interest in not being administratively segregated unless they are found to have committed major misconduct. HVMF officials found that Sanders committed major misconduct before placing him in administrative segregation. Because this narrower interest was adequately protected, no constitutional violation occurred. The Constitution does not require a second hearing specifically addressing the administrative segregation issue in this context.

While Sanders may argue that this policy memorandum is invalid under *Martin v. MDOC, supra,* I find that *Martin* does not apply to this case. The appellate court's partial retroactivity decision was intended to limit the entire supreme court decision, including the holding that MDOC must follow the Administrative Procedures Act. The appellate court wanted to avoid the grave prison disruption which would occur if, in cases such as this, the supreme court decision received full retroactive effect. *Martin v. MDOC, supra,* 168 Mich.App. at 653, 425 N.W.2d 205. *Martin* does not reach a challenge by Sanders to this administrative segregation memorandum in this case.

■ A second MDOC regulation, Rule 791.5513 [4], prescribes the amount of good time which an inmate may forfeit for various rule violations:

**4.** This rule was amended in the 1987 Annual Supplement of the *Michigan Administrative Code,* at page 758.

(1) A resident who has been found guilty of 1 or more of the following violations of prison rules, ... may forfeit his or her earned good time, for each violation, as follows:

.    .    .    .    .

(c) For disobeying a direct order, substance abuse, and possession of dangerous contraband, the resident may forfeit up to 6 months of earned good time.

(2) The amount of earned good time that the resident forfeits, if any, shall be determined by the institution head, within the limits set forth in this rule.

*Michigan Administrative Code*, 1980 Annual Supplement, at page 472.

This rule also creates a protected interest under *Bills v. Henderson, supra; Hewitt v. Helms, supra*, and related cases. If an institution head decides to forfeit good time, he or she may not exceed the ceilings imposed by this rule. Plaintiff has a protected interest in not having the HVMF head remove more than six months of his good time for each disobedience infraction.

Rule 791.5513 itself contains a procedural requirement; the HVMF head will determine whether and what amount of good time to deduct. Borgert followed this procedure. He deducted Sanders' good time for October, 1985 disobedience infractions three times. *See* Defendants' exhibit 13, documents 11, 12 and 13, which are Forfeiture/Restoration Orders and Time Sheets. None of these deductions exceeded six months per infraction. Under *Walker v. Mintzes, supra*, this procedure meets fourteenth amendment protections. The Constitution does not require a second hearing on the forfeiture of good time issue. Accordingly, no constitutional violation occurred.

Qualified immunity is an affirmative defense. *Huron Valley Hospital, Inc. v. City of Pontiac*, 612 F.Supp. 654, 661 (E.D. Mich.1985), *modified on other grounds*, 792 F.2d 563 (1986), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254. Because I conclude that no constitutional violation occurred, I need not reach the immunity issue. Further, this issue could not have been resolved before trial because this pro se plaintiff only clearly defined his claims when the trial began. Even in a more routine case, qualified immunity depends on the circumstances of an official's actions, as established by the evidence at trial. *Manion v. Michigan Board of Medicine*, 765 F.2d 590, 592 (6th Cir.1985).

For all of the foregoing reasons, I enter judgment in favor of defendants. The above opinion constitutes my findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. IT IS SO ORDERED.