*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EARL BOOTH,

       Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS and
ANGELA D. GEIGER,

       Defendants-Appellees.

UNPUBLISHED
March 17, 2020

No. 346551
Court of Claims
LC No. 17-000162-MZ

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals by right the Court of Claims' grant of summary disposition for his employer, the Michigan Department of Corrections (DOC) and defendant Angela Geiger, a DOC employee, regarding his suit to access a report from the DOC's Allegations, Investigations, Personnel Action System (AIPAS) that he claims defendants wrongfully refused to provide him in violation of the Bullard-Plawecki employee right to know act (ERKA), MCL 423.501 *et seq*. We affirm.

## I. BACKGROUND

Plaintiff previously appealed to this Court the trial court's grant of summary disposition to defendants and we affirmed in part, reversed in part, and remanded for further proceedings. This Court summarized the facts as follows:

> Prior to the instant lawsuit, plaintiff filed a lawsuit against the DOC under the Freedom of Information Act (FOIA), MCL 14.231 *et seq.*, seeking various records, including the AIPAS report in question in this case. This Court has twice considered plaintiff's appeals in the FOIA case. *Booth v Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued June 9, 2015 (Docket No. 324319) (*Booth I*); *Booth v Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued December 1, 2016 (Docket Nos. 331807 and 332014) (*Booth II*).

-1-

In addition to his FOIA dispute with the DOC, plaintiff also pursued his potential rights and remedies under the collective bargaining agreement (CBA) between the DOC and the Michigan Corrections Organization SEIU Local 526M, CTW (MCO SEIU). Plaintiff sought to exercise his contractual right to review his personnel file and obtain copies of its contents. On April 13, 2017, plaintiff sent an e-mail to Geiger, requesting a copy of AIPAS Report #9010, which plaintiff described as "a Report in my Personnel File." Geiger responded to plaintiff's request by e-mail, advising him that he could review his personnel file if he scheduled an appointment with his human resources liaison. However, Geiger also advised plaintiff of the DOC's position that AIPAS reports are not part of the personnel file and that plaintiff would not be provided with a copy of the AIPAS report in question. Plaintiff filed the present suit in the Court of Claims, alleging [among other claims the violation of the ERKA]. [*Booth v Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued July 31, 2018 (Docket No. 339779), pp 1-2 (*Booth III*).]

In *Booth III*, defendants argued that the AIPAS report did not qualify as a personnel record under ERKA because it fell under the exception set forth in MCL 423.501(1)(c)(*v*) for information kept separately from other records and related to an investigation. *Id.* at 7. This Court noted that the DOC previously defined AIPAS as " 'a database that tracks the [DOC's] investigations of employees to determine whether they have violated work rules and such reports address the employee's work performance.' " *Id.* at 8, quoting *Booth I*, unpub op at 4. Plaintiff argued that the trial court erred by ruling that the report not only could be considered exempt from disclosure but "in fact *was* exempt from disclosure under the ERKA." This Court held that the trial court prematurely granted defendants summary disposition because whether MCL 423.509(1)[1] applied to the report "[depended] entirely on its substantive contents." *Id.* at 8. This Court stated that "violating work rules is not the same as violating criminal laws" and that "[u]nder the circumstances it was improper for the trial court simply to accept defendant's bare assertion at face value without at least reviewing the challenged AIPAS report in camera." *Id.* This Court reversed the trial court's grant of summary disposition as to plaintiff's ERKA claim and remanded with instruction to review the AIPAS report *in camera* to determine whether MCL 423.509(1) applied, and then conduct further proceedings. *Id.* at 7-8.

---

[1] MCL 423.509(1) provides:

> If an employer has reasonable cause to believe that an employee is engaged in criminal activity that might result in loss or damage to the employer's property or disruption of the employer's business operation, and the employer is engaged in an investigation, then the employer may keep a separate file of information relating to the investigation. Upon completion of the investigation or after 2 years, whichever comes first, the employee must be notified that an investigation was or is being conducted of the suspected criminal activity described in this section. Upon completion of the investigation, if disciplinary action is not taken, the investigative file and all copies of the material in it must be destroyed.

On remand, both parties submitted briefs that analyzed the AIPAS report under MCL 423.509(2) which permits a criminal justice agency that is involved in an investigation of alleged criminal activity or the violation of an agency rule to maintain a confidential file of information related to the investigation separate from an employee's personnel file and exempts such from disclosure. The parties did not argue that MCL 423.509(1) applied. Plaintiff argued that the AIPAS report concerned a work rule based on a DOC policy directive, and that MCL 423.509(2) did not apply because the DOC had not promulgated the policy directive under the Administrative Procedures Act (APA), MCL 24.201 *et seq*. Defendants argued that MCL 423.509(2) applied to "any agency rule, including work rules" and not merely limited to rules promulgated under the APA. The trial court reviewed the AIPAS report *in camera* and noted that the parties conceded that it did not contain allegations of criminal activity so that the disclosure exception in MCL 423.509(1) did not apply. The trial court, however, concluded that the MCL 423.509(2) exception applied and that, under ERKA, the rule being investigated did not need to be promulgated under the APA, but need "only be a rule of the criminal justice agency." The trial court, granted defendants summary disposition under MCR 2.116(I)(1).

## II. STANDARD OF REVIEW

We review de novo issues of statutory interpretation. *Vanalstine v Land O'Lakes Purina Feeds, LLC*, 326 Mich App 641, 648; 929 NW2d 789 (2018). We also review de novo a trial court's ruling on a motion for summary disposition. *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 11; 930 NW2d 393 (2018). We review de novo a trial court's conclusion that defendants were entitled to judgment as a matter of law under MCR 2.116(I)(1). *Sobiecki v Dept of Corrections*, 271 Mich App 139, 141; 721 NW2d 229 (2006) (quotation marks and citation omitted). MCR 2.116(I)(1) provides that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." "Under this rule, a trial court has authority to grant summary disposition sua sponte, as long as one of the two conditions in the rule is satisfied." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853, 855 (2009).

## III. ANALYSIS

Plaintiff argues that the term "agency rule," as used in MCL 423.509(2), is limited to rules promulgated by a criminal justice agency under the APA. Plaintiff contends that the trial court erred by concluding that the DOC's work rule constituted an "agency rule" that permitted the DOC to exempt from disclosure the AIPAS report regarding its investigation of plaintiff's workplace conduct. We disagree.

In *Newark Morning Ledger Co v Saginaw County Sheriff*, 204 Mich App 215, 221; 514 NW2d 213 (1994), this Court clarified that:

> the purpose of the ERKA is to establish an individual employee's right to examine the employee's personnel records, i.e., the documents that are being kept by the employer concerning that employee. In the ERKA, the term "personnel record" is generally defined, but certain materials and information are identified that are excluded from the definition, and are not available to the employee.

Under MCL 423.503, an employer must provide an employee who makes a written request an opportunity to review the employee's personnel record if the employer has a personnel record for that employee. MCL 423.501(c) in relevant part defines "personnel record" as

> a record kept by the employer that identifies the employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action. . . . A personnel record shall not include:
>
> (v) Information that is kept separately from other records and that relates to an investigation by the employer pursuant to section 9.

Section 9, MCL 423.509, sets forth the instances in which separate investigative files may be kept and not disclosed by the employer to the employee. Defendants concede the inapplicability of subsection (1) which applies to investigations of criminal activity by an employee. The relevant statutory provision, subsection (2), provides:

> An employer that is a criminal justice agency and that is involved in the investigation of an alleged criminal activity or the violation of an agency rule by an employee shall maintain a separate confidential file of information relating to the investigation. Upon completion of the investigation, if disciplinary action is not taken, the employee must be notified that an investigation was conducted. If the investigation reveals that the allegations are unfounded or unsubstantiated or if disciplinary action is not taken, the separate file must contain a notation of the final disposition of the investigation and information in the file must not be used in any future consideration for promotion, transfer, additional compensation, or disciplinary action. The employer may release information in the separate file to a prospective employing law enforcement agency if the information is part of a record regarding the reason or reasons for, and circumstances surrounding, a separation of service under section 5 of the law enforcement officer separation of service record act, 2017 PA 128, MCL 28.565. The employer shall release information in the separate file to the Michigan commission on law enforcement standards upon the request of the Michigan commission on law enforcement standards.

In *Newark*, this Court considered the Legislature's intent respecting the Michigan Freedom of Information Act (FOIA) personnel record exemption from disclosure under MCL 15.243(1)(t)(*ix*). To discern that intent, this Court compared the two statutes and reflected upon the Legislature's intent as expressed in the ERKA, MCL 423.509, which excludes from personnel records and exempts from disclosure internal investigations. This Court explained:

> Thus, the Legislature, in an act designed to extend an employee's ability to gain access to the employer's files beyond the rights afforded to the public by the FOIA, determined that the employee should not be allowed access to the records of the employer's internal investigations. The Legislature's clearly expressed intent in the ERKA to prohibit access by an employee to any internal investigations relating to that employee demonstrates that the Legislature intended that access to

-4-

those records be severely restricted. We can reasonably infer that in drafting the FOIA, the Legislature had the same intent relative to records of closed internal affairs investigations such as those requested by plaintiff. The Legislature would not have denied an employee access to documents that were readily available to the public pursuant to the FOIA. Therefore, we conclude that the Legislature intended that the internal affairs investigatory records requested by plaintiff fall within the meaning of the term "personnel record of law enforcement agencies" as used in the FOIA. [*Newark*, 204 Mich App at 223.]

The parties and the trial court correctly agreed that the DOC is a criminal justice agency for purposes of MCL 423.509(2). Plaintiff and defendants, however, disagree regarding the applicability of this subsection. Defendants contend that the subsection applied in this case because the AIPAS report related to its internal investigation of plaintiff's workplace conduct because it involved the investigation of the violation of an agency rule by an employee. Defendants essentially argue that its workplace rule constitutes an agency rule and its investigation report does not constitute a personnel record and is excluded under MCL 423.501(c)(v). Plaintiff argues that MCL 423.509(2) only applies in two instances, neither of which occurred in this case: (1) where a criminal justice agency is involved in an investigation of criminal activity by the employee, or (2) where a criminal justice agency is involved in an investigation of a violation of an "agency rule." Plaintiff asserts that "agency rule" is a legal term of art that means a "rule" promulgated by a criminal justice agency under the strictures of the APA. Plaintiff asserts that the APA definition of the word "rule" found in MCL 24.207 applies and gives meaning to the term "agency rule" as used in MCL 423.509(2). To be an "agency rule," it had to be promulgated using the legislatively prescribed multistep process provided in MCL 24.231-24.266. Plaintiff argues that defendants' investigation merely concerned a workplace rule and not such an "agency rule," and therefore, defendant could not refuse to provide him the AIPAS report regarding its investigation of his workplace conduct.

In *Boyd v Civil Service Comm'n*, 220 Mich App 226, 235; 559 NW2d 342 (1996), this Court explained:

> The DOC is an administrative agency subject to the provisions of the Administrative Procedures Act (APA). *Martin v Dep't of Corrections*, 424 Mich 553, 556; 384 NW2d 392 (1986); MCL 24.313. The director of the DOC is empowered under MCL 791.206 to promulgate rules regarding the control, management, and operation of state prisons, as well as further rules "with respect to the affairs of the department as the director considers necessary or expedient for the proper administration of this act."

In *Clonlara, Inc v State Bd of Educ*, 442 Mich 230, 239; 501 NW2d 88 (1993) (citation omitted), our Supreme Court explained the different types and effect of rules agencies create:

> Rules adopted by an agency in accordance with the APA have the force and effect of law. They must be promulgated in accordance with the procedures set forth in the APA, and are not valid if those procedures are not followed. Where, however, the agency has not been empowered to promulgate rules, policy statements issued by it need not be promulgated in accordance with APA

procedures and do not have the force of law. Such statements are so-called "interpretive rules." As expressed by Professor Davis, "An interpretive rule is any rule an agency issues without exercising delegated legislative power to make law through rules."

Under MCL 791.204(c), the DOC has exclusive jurisdiction over penal institutions. Under MCL 791.206(1), the director of the DOC may promulgate rules under the APA to provide for "(a) [t]he control, management, and operation of the general affairs of the department", "(d) [t]he management and control of penal institutions", "(e) [t]he management and control of prison labor and industry", and (3) "the affairs of the department as the director considers necessary or expedient for the proper administration of this act." Under MCL 791.205, the director has authority to appoint an assistant director in charge of penal institutions who is authorized to "exercise and perform the respective powers and duties prescribed and conferred by this act, and such other powers and duties as may be assigned by the director, subject at all times to his control." *Clonlara* and *Boyd* clarify that an agency like the DOC can create different rules to serve different purposes, including formal rules promulgated under the APA that have the effect of law, as well as, interpretive rules that do not have the force of law or constitute the exercise of delegated legislative power.

In the ERKA, the Legislature did not define the term "agency rule" or specify the manner in which that term should be understood for purposes of interpreting MCL 423.509(2). Neither does MCL 423.509(2) or other provisions of the ERKA specify that the term "agency rule" must be understood as a rule promulgated by a criminal justice agency pursuant to the APA. To resolve the parties' dispute over the meaning of the term "agency rule," we must apply the principles of statutory interpretation. In *Brickey v McCarver*, 323 Mich App 639, 642-643; 919 NW2d 412 (2018) (quotation marks, citations, and alteration omitted), this Court recently summarized the rules of statutory interpretation as follows:

> The primary rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language. Our primary focus in statutory interpretation is the language of the statute under review. If the language is unambiguous, the intent of the Legislature is clear and judicial construction is neither necessary nor permitted.

> The words of the statute provide the best evidence of legislative intent and the policy choices made by the Legislature. Our role as members of the judiciary is not to second-guess those policy decisions or to change the words of a statute in order to reach a different result. In fact, a clear and unambiguous statute leaves no room for judicial construction or interpretation. Therefore, we start by examining the words of the statute, which should be interpreted on the basis of their ordinary meaning and the context within which they are used in the statute.

> Any issues relating to the soundness of the policy underlying the statute or its practical ramifications are properly directed to the Legislature. We may not read into the statute what is not within the Legislature's intent as derived from the language of the statute.

In *Farris v McKaig*, 324 Mich App 349, 354; 920 NW2d 377 (2018) (quotation marks and citations omitted), this Court further explained:

> When interpreting an undefined statutory term, the term must be accorded its plain and ordinary meaning. Consulting a lay dictionary is proper when defining common words or phrases that lack a unique legal meaning, but when the statutory term is a legal term of art, the term must be construed in accordance with its peculiar and appropriate legal meaning.

MCL 8.3 prescribes that statutes shall be construed according to the rules stated in MCL 8.3a to MCL 8.3w. A legal term of art "must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008), citing MCL 8.3a which provides:

> All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

When interpreting a legal term of art, "courts should consult a legal dictionary." *Brackett*, 482 Mich 276-277. If "agency rule" constitutes a legal term of art, as plaintiff contends, the appropriate analysis would require consulting *Black's Law Dictionary* for that specialized meaning. *Black's Law Dictionary* (11th ed), however, does not define the term "agency rule." That term does not appear to be a legal term of art with a legal dictionary definition. *Merriam-Webster's Collegiate Dictionary* (11th ed) similarly does not define the term "agency rule." Therefore, we consider the meaning of the separate words "agency" and "rule." The DOC is a criminal justice agency which constitutes a government agency. To find the meaning of "government agency," *Black's Law Dictionary* (11th ed), p 840, refers to the term "agency" which in turn is defined among other things as an "official body, esp. within the government, with the authority to implement and administer particular legislation." *Black's Law Dictionary* (11th ed), p 77. *Merriam-Webster's Collegiate Dictionary* (11th ed), p 24, similarly defines the word "agency" in relevant part as "an administrative division (as of government)." We conclude that the word "agency" as used in the context of MCL MCL 423.509(2) must be understood to refer to a governmental agency, an administrative division of government, as particularly specified within the statutory provision, i.e., "a criminal justice agency" such as the DOC.

MCL 423.509(2) unambiguously specifies that, a separate confidential file may be maintained concerning an investigation pertaining to "the violation of an agency rule by an employee." The plain language of the statute, read in context, indicates that the rule must be the criminal justice agency's rule. *Black's Law Dictionary* (11th ed), p 1594, defines the word "rule" as "an established and authoritative standard or principle; a general norm mandating or guiding conduct or action in a given type of situation." *Black's Law Dictionary* (11th ed), p 1595, alternatively defines the word "rule" under a category of "special rule" as a

> regulation governing . . . an agency's internal procedures; esp., the whole or any part of an agency statement of general or particular applicability and future effect, designed to implement, interpret, or prescribe law or policy or to describe the

organization, approval, or practice requirements of the agency, including the approval or prescription for the future of rates, wages, corporate or financial structures, reorganizations of those structures, prices, facilities, appliances, services, allowance for any of the foregoing, valuation, costs, and accounting within the agency; or practices bearing on any of the foregoing.

*Merriam-Webster's Collegiate Dictionary* (11th ed), p 1089, defines the word "rule" among other things as "a prescribed guide for conduct or action" or "a regulation or bylaw governing procedure or controlling conduct." Both dictionaries provide similar general definitions of the word "rule." *Black's Law Dictionary's* special rule definition concerns administrative agency regulations designed to implement, interpret or prescribe law or policy, etc. In MCL 423.509(2), the Legislature did not indicate that the term "agency rule" must be understood exclusively in the narrow sense of an agency regulation. Had it so intended, it could have done so. Because the term "agency rule" is not a legal term of art, the words' ordinary and plain meanings must apply for proper interpretation of them as used in MCL 423.509(2).

We are not persuaded that this Court previously incorrectly explained in *Newark* that the "Legislature's clearly expressed intent in the ERKA to prohibit access by an employee to any internal investigations relating to that employee demonstrates that the Legislature intended that access to those records be severely restricted." *Newark*, 204 Mich App at 223. As in *Newark*, we conclude that the Legislature intended to exempt from disclosure internal investigations not only of criminal activity but also internal investigations of employee violations of a criminal justice agency's rule that guides or controls employee conduct. Such rules are not and need not be promulgated under the APA but fall within the authority the DOC has to administer correction facilities and properly manage them in keeping with the policies created for those purposes. Therefore, MCL 423.509(2) applied in this case to the internal investigation reported in the separate AIPAS report regarding the DOC's investigation of plaintiff's workplace conduct.

The trial court appropriately declined to read into or add to MCL 423.509(2) a requirement that the "agency rule" investigation may pertain only to a rule promulgated by a criminal justice agency pursuant to the APA. The trial court, therefore, did not err by ruling that MCL 423.509(2) applied in this case and exempted from disclosure under the ERKA the AIPAS report regarding the DOC's investigation of plaintiff's workplace conduct.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford