# STATE OF MICHIGAN

# COURT OF APPEALS

---

JOHN DOES 11-18 and JANE DOE 1/all others similarly situated,

        Plaintiffs-Appellees,

v

DEPARTMENT OF CORRECTIONS, GOVERNOR, FORMER DIRECTOR DEPARTMENT OF CORRECTIONS, FORMER DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER CHIEF DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, WARDEN OF CHARLES EGELER RECEPTION AND GUIDANCE CENTER, WARDEN OF E C BROOKS CORRECTIONAL FACILITY, FORMER WARDEN OF RICHARD A. HANDLON CORRECTIONAL FACILITY, WARDEN OF RICHARD A. HANDLON CORRECTIONAL FACILITY, FORMER WARDEN OF OAKS CORRECTIONAL FACILITY, WARDEN OF THUMB CORRECTIONAL FACILITY, WARDEN OF CHIPPEWA CORRECTIONAL FACILITY, WARDEN OF KINROSS CORRECTIONAL FACILITY, WARDEN OF NEWBERRY CORRECTIONAL FACILITY, and WARDEN OF MICHIGAN REFORMATORY CORRECTIONAL FACILITY,

        Defendants-Appellants.

FOR PUBLICATION
March 27, 2018

No. 332536
Washtenaw Circuit Court
LC No. 13-001196-CZ

---

JOHN DOES 1-10/all others similarly situated,

        Plaintiffs-Appellees,

v

No. 335440

-1-

DEPARTMENT OF CORRECTIONS,
GOVERNOR, DIRECTOR DEPARTMENT OF
CORRECTIONS, FORMER DIRECTOR
DEPARTMENT OF CORRECTIONS, DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER CHIEF DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, WARDEN OF IONIA
CORRECTIONAL FACILITY, FORMER
WARDEN OF E C BROOKS CORRECTIONAL
FACILITY, WARDEN OF GUS HARRISON
CORRECTIONAL FACILITY, FORMER
WARDEN OF RICHARD A. HANDLON
CORRECTIONAL FACILITY, FORMER
WARDEN OF CARSON CITY
CORRECTIONAL FACILITY, FORMER
WARDEN OF OAKS CORRECTIONAL
FACILITY, WARDEN OF OAKS
CORRECTIONAL FACILITY, FORMER
WARDEN OF THUMB CORRECTIONAL
FACILITY, WARDEN OF CHIPPEWA
CORRECTIONAL FACILITY, WARDEN OF
MARQUETTE CORRECTIONAL FACILITY,
WARDEN OF BELLAMY CREEK
CORRECTIONAL FACILITY, WARDEN OF
KINROSS CORRECTIONAL FACILITY,
WARDEN OF NEWBERRY CORRECTIONAL
FACILITY, FORMER WARDEN OF WOMEN'S
HURON VALLEY CORRECTIONAL
FACILITY, WARDEN OF WOMEN'S HURON
VALLEY CORRECTIONAL FACILITY,
WARDEN OF MICHIGAN REFORMATORY
CORRECTIONAL FACILITY, and WARDEN
OF SAGINAW CORRECTIONAL FACILITY,

        Defendants-Appellants.

JOHN DOES 1-10/all others similarly situated,

        Plaintiffs-Appellees,

v

DEPARTMENT OF CORRECTIONS,
GOVERNOR, DIRECTOR DEPARTMENT OF
CORRECTIONS, FORMER DIRECTOR
DEPARTMENT OF CORRECTIONS, DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER CHIEF DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, WARDEN OF IONIA
CORRECTIONAL FACILITY, FORMER
WARDEN OF E C BROOKS CORRECTIONAL
FACILITY, WARDEN OF GUS HARRISON
CORRECTIONAL FACILITY, FORMER
WARDEN OF RICHARD A. HANDLON
CORRECTIONAL FACILITY, FORMER
WARDEN OF CARSON CITY
CORRECTIONAL FACILITY, FORMER
WARDEN OF OAKS CORRECTIONAL
FACILITY, WARDEN OF OAKS
CORRECTIONAL FACILITY, FORMER
WARDEN OF THUMB CORRECTIONAL
FACILITY, WARDEN OF CHIPPEWA
CORRECTIONAL FACILITY, WARDEN OF
MARQUETTE CORRECTIONAL FACILITY,
WARDEN OF BELLAMY CREEK
CORRECTIONAL FACILITY, WARDEN OF
KINROSS CORRECTIONAL FACILITY,
WARDEN OF NEWBERRY CORRECTIONAL
FACILITY, FORMER WARDEN OF WOMEN'S
HURON VALLEY CORRECTIONAL
FACILITY, WARDEN OF WOMEN'S HURON
VALLEY CORRECTIONAL FACILITY,

No.  335527
Washtenaw Circuit Court
LC No.  15-001006-CZ

WARDEN OF MICHIGAN REFORMATORY
CORRECTIONAL FACILITY, and WARDEN
OF SAGINAW CORRECTIONAL FACILITY,

Defendants-Appellants.

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

O'CONNELL, P.J. (*dissenting*).

I respectfully dissent.

Plaintiffs' artfully drafted complaint seeks to hold these state defendants *vicariously* liable for criminal actions of third parties while plaintiffs were incarcerated in the state prison system. Plaintiffs' complaint seeks to avoid governmental immunity, seeks to declare 1999 PA 202 unconstitutional, and seeks to wrest money damages from these state defendants.

Plaintiffs' primary complaint is that *if* these state officials had instituted better policies with regard to youthful prisoners, these plaintiffs *may not* have been victims of crimes by unnamed third parties while incarcerated in the prison system. The basket that plaintiffs place all of their eggs into is Article 3 of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. But Article 3 does not place any affirmative duties on these state defendants. No Michigan Article 3 ELCRA case has ever recognized a cause of action based upon an allegation of a *failure to discriminate*. Allowing plaintiffs to use the ELCRA in this innovative manner places an impossible burden on public service providers and is antagonistic to current state law. In addition, plaintiffs have numerous other remedies for the respite they are seeking.

For the reasons stated in this opinion, I would reverse the summary disposition orders of the trial court and remand for further proceedings consistent with this opinion.

## I. FACTS AND NATURE OF CASE

As a result of being convicted of serious criminal offenses, plaintiffs are incarcerated in the state prison system. Plaintiffs' theory of the case is that defendants' former *policy* of housing youthful offenders with non-youthful offenders resulted in plaintiffs' abuse, harassment, or other unlawful treatment by other prisoners or correctional staff. Plaintiffs claim that the state's policies, customs, and practices discriminate against youthful offenders by failing to separate youthful offenders from adult offenders. Plaintiffs seek to hold state officials, such as the Governor, wardens, former wardens, directors, former deputy and chief directors, and all state officials associated with the prison system, accountable for failing to institute *better* policies that *may* have better protected youthful offenders while serving sentences in the state prison system. Plaintiffs cogitate that their civil rights were violated; as a result, plaintiffs speculate, or are at least hopeful, that they may be entitled to monetary damages from these state defendants.

Plaintiffs have alleged violations of Article 3 of the ELCRA, MCL 37.2301, which prohibits discrimination in places of public accommodation or in the delivery of public services,

-4-

MCL 37.2302(a). Plaintiffs allege four separate violations of Article 3 of the ELCRA: (I) creating a sexually hostile prison environment, (II) failing to prevent and remedy a sexually hostile prison environment, (III) aiding and abetting violations of the ELCRA, and (IV) age discrimination.

In three separate orders, the trial court denied the state defendants' request to dismiss this lawsuit. This case presents three significant issues: (1) whether governmental immunity applies to a claim brought under Article 3 of the ELCRA, (2) whether 1999 PA 202 is constitutional, and (3) whether plaintiffs have stated a cognizable cause of action under Article 3 of the ELCRA.

## II. THE MAJORITY'S ERRONEOUS AND HISTORICALLY WRONG CONCLUSION THAT GOVERNMENTAL IMMUNITY IS NOT APPLICABLE TO THIS CASE

Plaintiffs and the majority opinion theorize that Article 3 of the ELCRA operates as a waiver of governmental immunity under the government tort liability act (GTLA), MCL 691.1401 *et seq*. I respectfully disagree. Nothing in the language of Article 3 of the ELCRA provides for a waiver of governmental immunity for *state officials acting in their official capacity*. Hence, *state officials acting in their official capacity* retain governmental immunity.

The GTLA grants absolute immunity from tort liability to "the elective or highest appointive executive official of all levels of government . . . if he or she is acting within the scope of his or her . . . executive authority." MCL 691.1407(5); *Beaudrie v Henderson*, 465 Mich 124, 139 n 11; 631 NW2d 308 (2001). Other state officials have immunity from tort liability when all of the following conditions are met:

(a) The officer [or] employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's [or] employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

To survive a motion for summary disposition based on governmental immunity, plaintiffs must plead in avoidance of governmental immunity and "allege facts warranting the application of an exception to governmental immunity." *Plunkett v Dep't of Transp*, 286 Mich App 168, 180; 779 NW2d 263 (2009). Plaintiffs' complaint hypothesizes that defendants' *policies or lack of policies* caused the maltreatment of these plaintiffs. Remarkably, plaintiffs do not claim that any of the named defendants perpetrated any of the alleged abuse or harassment. Rather, the alleged criminal acts were committed by other prisoners or other non-parties. Even taking all of plaintiffs' allegations as true, see *McLean v Dearborn*, 302 Mich App 68, 72-73; 836 NW2d 916 (2013), plaintiffs failed to plead any facts in their complaint that Article 3 of the ELCRA waives immunity for *state officials acting in their official capacity* when making policy decisions for the

State of Michigan.  No such waiver exists in the ELCRA or the GTLA.  The GTLA provides immunity for the state defendants *acting in their official capacity* in regards to policy decisions.[1] That should be the end of this issue.

Moreover, these state actors cannot be held vicariously liable for the criminal acts of third parties, or in a few instances, criminal acts of unnamed correctional officers  who were clearly acting outside the scope of their authority.  In *Hamed v Wayne Co*, 490 Mich 1, 5; 803 NW2d 237 (2011), the Supreme Court addressed "whether Wayne County and its sheriff's department may be held vicariously liable for a civil rights claim under MCL 37.2103(i) based on a criminal act of a deputy sheriff committed during working hours but plainly beyond the scope of his employment."  The Supreme Court rejected liability for these state actors, explaining that "permitting liability against defendants under these circumstances would impose too great a burden on public-service providers and on society in general, which is clearly contrary to the Legislature's intent."  *Id*. at 30.

In furtherance of preventing the burdensome consequences of holding state actors vicariously liable for the acts of their employees, the Supreme Court warned against artfully pleading a civil rights claim to bypass the GTLA:

> Artful pleading would also allow a plaintiff to avoid governmental immunity under the [GTLA].  A school district, for example, could not be vicariously liable in tort for a teacher's sexual molestation of a student because the GTLA would bar the claim.  However, if the plaintiff styled its claim as a CRA action, the school district could be vicariously liable under a theory of quid pro quo sexual harassment affecting public services.  Plaintiff's preferred approach, under which public-service providers would be strictly liable for *precisely the same conduct* as that for which they would typically be immune, is inherently inconsistent with the Legislature's intent.  If the Legislature had intended such a result, it should have clearly abrogated the common-law rule for purposes of the CRA.  [*Id*. at 29 n 74.]

*Hamed* clearly holds that plaintiffs cannot avoid the GTLA by simply alleging a violation of the ELCRA.  Plaintiffs, to their *innovative* credit, have artfully pleaded a cause of action exactly as the Supreme Court cautioned in *Hamed* should not be done.

I would also note that the GTLA, which grants immunity to *state officials acting in their official capacity*, MCL 691.1407, amended in 1986, is the later statutory enactment.  See *Jones v Bitner*, 300 Mich App 65, 76; 832 NW2d 426 (2013).  "It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws."  *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505

---

[1] Plaintiffs have sued the state defendants in both their individual capacity and in their official capacity, but plaintiffs' complaint does not make any allegations against the individual defendants acting in their individual capacity.

NW2d 519 (1993). "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). If the Legislature intended to waive the historical grant of immunity to state officials acting in their official capacity, it is incumbent on the Legislature to expressly state that such a waiver exists. No such waiver is found in the ELCRA or the GTLA. This Court cannot by dicta infer such a waiver. We are required to follow the GTLA, as the later and the more specific act.

If the aforementioned law is not sufficient, I would additionally note that the majority opinion cites three Article 2 employment cases[2] for the alleged proposition that governmental immunity is not a defense to a civil rights action. Surprisingly, I concur with this singular, isolated, and irrelevant statement of the law—the GTLA is not an affirmative defense to any cause of action. See *Mack v Detroit*, 467 Mich 186, 200-203; 649 NW2d 47 (2002). Accordingly, plaintiffs must plead in avoidance of the GTLA.

I find the majority's short and incomplete analysis of the law in regards to governmental immunity to be disturbing. The majority opinion makes no attempt to discern if plaintiffs have pled their case in avoidance of governmental immunity, to discern which statute is the latest in time, or to cite any Article 3 cases that have held that governmental immunity is a defense to a civil rights action under Article 3. Plaintiffs have not pleaded in avoidance of governmental immunity. Therefore, the state actors acting in their official capacity retain governmental immunity as set forth in the GTLA.

## III. THE MAJORITY'S MISGUIDED CONCLUSION THAT 1999 PA 202 IS UNCONSTITUTIONAL

The majority opinion, without any discernable *statutory* analysis and without any accepted *constitutional* analysis, declares that the Legislature acted outside the scope of its constitutional authority when it enacted 1999 PA 202 (the amendment). I humbly suggest that it is the majority opinion that has acted outside the scope of its authority, not the Legislature.

## A. HISTORY OF THIS LITIGATION

In the words of George Santayana, "Those who cannot remember the past are condemned to repeat it."

This case and its predecessors, including *Neal v Dep't of Corrections*, 230 Mich App 202; 583 NW2d 249 (1998) (*Neal I*), and *Neal v Dep't of Corrections (On Rehearing)*, 232 Mich App 730; 592 NW2d 370 (1998) (*Neal II*), has a 20-year history. In 1998, this Court decided *Neal I*, 230 Mich App at 209-215, in which a majority held that prisons were not a place of public accommodation or a place of public service, as defined by the ELCRA, MCL 37.2301(b). On rehearing, one judge reversed her position, and the majority concluded that

---

[2] Article 2 of the ELCRA only pertains to employee-employer relationships. Article 2 does not apply to this case because plaintiffs are not employees of defendants.

prisons provided a public service on the basis of the statutory definition of "public service," MCL 37.2301(b). *Neal II*, 232 Mich App at 735-736.[3] In response to a statement in *Neal II*, 232 Mich App at 740, that the Legislature did not explicitly exclude prisoners from the ELCRA, the Legislature passed the 1999 amendment to do just that. If that were not sufficient precedent to uphold the amendment, I note that a 2000 conflict panel of this Court gave the same advice to the Legislature in *Doe v Dep't of Corrections*, 240 Mich App 199, 201; 611 NW2d 1 (2000), stating that the Legislature should draft the statute to reflect its intent that the statute does not apply to prisoners and prisons.

When viewed in its correct context, it is obvious that 1999 PA 202 clarified the definition of "public service" found in MCL 37.2301(b). The amendment was not meant to deprive any person of any rights guaranteed under our constitution; it simply amended the definition of the term "public service."

Paradoxically, the Legislature did exactly as two panels of this Court advised it to do. Today, the majority opinion rebukes the advice of two prior panels of this Court and declares 1999 PA 202 unconstitutional. Such an action by a panel of this Court is unprecedented in the history of this Court, especially when prisons do not provide a public service as that term is defined in Article 3 of the ELCRA.

## B. STANDARD OF REVIEW

The majority opinion has set forth a constitutional barrier to the 1999 amendment and, unsurprisingly, found the legislation unable to surmount that barrier. The majority opinion fails to set forth a standard of review for its analysis of the 1999 amendment. Appellate courts cannot strike down a legislative enactment on the basis of a nonexistent standard of review.

A constitutional challenge to the validity of a statute can be brought in one of two ways, by either a facial challenge or an as-applied challenge. "The party challenging the constitutionality of the statute has the burden of proving the law's invalidity." *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 414-415; 878 NW2d 891 (2015) (citation and quotation marks omitted). The challenging party must overcome a heavy burden because "[s]tatutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014) (citation and quotation marks omitted).

---

[3] I note that the majority opinion, in *Neal II*, took a wrong turn at its discussion of the decision in *Pennsylvania Dep't of Corrections v Yeskey*, 524 US 206; 118 S Ct 1952; 141 L Ed 2d 215 (1998). See *Neal II*, 232 Mich App at 735-736. *Yeskey*, 524 US at 209-210, held that the definition of a "public entity" in the Americans with Disabilities Act of 1990 (ADA), 42 USC 12131(1)(B), applied to prisons and prisoners because it contained no exceptions excluding prisons. The ELCRA, on the other hand, does have such an exception, including the 1999 amendment as set forth in MCL 37.2301(b), which specifically excludes prisons and prisoners.

Plaintiffs do not address which type of challenge they bring to the 1999 amendment. At best, plaintiffs' allegation could be considered an as-applied challenge, meaning that the claimant has alleged " 'a present infringement or denial of a specific right or of a particular injury in process of actual execution' of government action." *Bonner v City of Brighton*, 495 Mich 209, 223 n 27; 848 NW2d 380 (2014), quoting *Village of Euclid, Ohio v Amber Realty Co*, 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926). "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." *Ada v Guam Society of Obstetricians & Gynecologists*, 506 US 1011, 1012; 113 S Ct 633; 121 L Ed 2d 564 (1992) (SCALIA, J., dissenting).

## C. TRADITIONAL CONSTITUTIONAL ANALYSIS

"The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied the equal protection of the law." *Electronic Data Sys Corp v Flint Twp*, 253 Mich App 538, 551; 656 NW2d 215 (2002), citing US Const, Am XIV; Const 1963, art 1, § 2. "To comply with the Equal Protection Clause . . . , defendant is required to exercise equal treatment of similarly situated" individuals. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 538; 831 NW2d 255 (2013) (citation and quotation marks omitted). If the state has a "rational basis" for treating similarly situated individuals differently, the state action will survive a constitutional equal protection challenge. See *Lear Corp*, 299 Mich App at 538-539. The rational basis test applies only when the equal protection challenge does not allege a claim based on a suspect classification or a fundamental right or an intermediate classification, such as gender. *Phillips v Mirac, Inc*, 470 Mich 415, 432; 685 NW2d 174 (2004).

The majority declares that 1999 PA 202 must be struck down because Const 1963, art 1, § 2 contains a mandate. The constitutional provision upon which the majority relies to strike down the amendment states that the "legislature shall implement this section by *appropriate* Legislation." Const 1963, art 1, § 2 (emphasis added.) The majority opinion states, "the legislature was constitutionally mandated to implement protections to *any* and *all* persons and lacked authority to exclude anyone[,]" *ante* at 8, meaning that if any legislation treats any person differently than any other person, that legislation must be struck down as unconstitutional. Putting aside the question of what, if any, law would pass such a contrived test, I would simply state that the law provides that a party challenging the facial constitutionality of an act "must establish that *no set of circumstances exists under which the [a]ct would be valid*. The fact that the [act] *might* operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]" *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987) (emphasis added).

The primary error of the majority opinion is its adoption of plaintiffs' assertion that prisoners and non-prisoners are similarly situated in all aspects of this case. "Resident inmates are obviously members of the public in a general sense[,]" but "[t]he rights of . . . inmates are severely restricted while they are incarcerated." *Martin v Dep't of Corrections*, 424 Mich 553, 565; 384 NW2d 392 (1986) (CAVANAGH, J., dissenting). Prisoners and non-prisoners have never been similarly situated, are not currently similarly situated, and hopefully will never be similarly situated. That a rational basis exists for treating prisoners differently from free citizens is obvious.

I conclude the 1999 amendment has a rational basis for its existence. In this regard, I concur with Judge Riordan's opinion in *Doe v Dep't of Corrections*, 312 Mich App 97, 134; 878 NW2d 293 (2015), vacated in part 499 Mich 886 (2016), that "the deterrence of meritless lawsuits and the preservation of scarce resources through the reduction of costs associated with resolving those lawsuits" reflects a legitimate government interest. Prisoners file an unprecedented number of lawsuits. The cost to the state has skyrocketed. In one instance, one prisoner has filed 5,813 lawsuits and counting.[4] The Legislature recognized that including prisons in the definition of "public service," MCL 37.2301(b), is problematic. Prisoners could sue for loss of their right to vote or for the loss of their Second Amendment right to carry a gun in prison. Therefore, there exists a rational basis for excluding prisons from the definition of "public service" in Article 3 of the ELCRA.[5]

Even assuming prisoners are in some respects similarly situated to non-prisoners, the Legislature can make special provisions for prisoners based upon their circumstances. In this case, plaintiffs make no allegations that certain prisoners were treated differently than other prisoners. As long as the Legislature does not discriminate within the unique class of individuals known as prisoners, no equal protection violation occurs.

Equal protection is not premised on an underlying independent right to a service or privilege; it prohibits the invidious discrimination among potential recipients of benefits or rights after the decision has been made to establish the right. See *Arnett v Kennedy*, 416 US 134, 163; 94 S Ct 1633; 40 L Ed 2d 15 (1974). Even if we were to assume that the definition of "public service" in Article 3 of the ELCRA applies to prisons and prisoners, plaintiffs' complaint does not allege any invidious discrimination among potential recipients of any prison services. More importantly, it does not discriminate based upon a prisoner's status as a prisoner, but treats all prisoners the same and has a rational basis for its realistic goal.

## D. LEGISLATIVE PREROGATIVE

Our Constitution provides that "[n]o person exercising powers of one branch [of government] shall exercise powers properly belonging to another branch . . . ." Const 1963, art 3, § 2. As I stated in my dissent in *Council of Organizations & Others for Education About*

---

[4] See https://www.usatoday.com/story/news/nation/2014/08/14/inmate-has-filed-5813-lawsuits--and-counting/14092317/.

[5] The unintended ramifications of the majority opinion are significant. The majority opinion allows prisoners, who are already the largest group of litigators in the state, to sue all state officials, including prosecutors, judges, the governor and all state officials acting in their official capacity, for ordinary decisions that these officials make each day. If a prisoner is not satisfied with a bond determination, a sentencing decision, or a prisoner classification, a prisoner can now sue for an Article 3 civil rights violation, and the GTLA is inapplicable. Any and all decisions made by prosecutors, state officials, and judges will now be subject to prisoner lawsuits claiming a violation of their civil rights, including all judicial sentencing decisions and all prosecutorial charging decisions. The floodgates are now open.

*Parochiaid v Governor*, 216 Mich App 126, 135; 548 NW2d 909 (1996) (O'CONNELL, J., dissenting), "the judiciary has no legislative powers, and, thus, it cannot act as a 'super legislature' to sit in review of the policy choices made by coordinate branches of government acting within their respective spheres of authority." It is the Legislature that makes the laws. The Court's job is to interpret the law. In my opinion, the majority has encroached on the sphere of authority reserved to our Legislature, thereby violating the doctrine of separation of powers.

The scope or *purview* of a legislative act is reserved to the Legislature. This case is similar to *Will v Mich Dep't of State Police*, 491 US 58, 71; 109 S Ct 2304; 105 L Ed 2d 45 (1989), in which the United States Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under [42 USC] 1983." In rejecting plaintiff's claim that the state and state officers were persons for the purpose of a 42 USC 1983 civil rights action, the Supreme Court explained that the language of § 1983 did not signal clear congressional intent to subject the states to liability. *Id*. at 64-65.

In the present case, the Legislature is simply defining the scope of its own legislative enactment. I simply repeat what the Legislature has stated in the enabling act to the 1999 amendment that prisons are not within the purview of "public service" as defined by Article 3 of the ELCRA. See 1999 PA 202, enacting § 1. The 1999 amendment's purpose was to define the scope of the term "public service," MCL 37.2301(b), consistent with the Legislature's task to define what "appropriate legislation" is, Const 1963, art 1, § 2. Article 3 of the ELCRA only applies to establishments that are "open to the public[.]" See MCL 37.2303. Furthermore, MCL 37.2302 states, "[e]xcept where permitted by law," thereby providing discretion to the Legislature to decide the scope of Article 3. When read in context, there is nothing unconstitutional in the language of 1999 PA 202.

The Legislature's intent was to state that those parts of prisons that do not deal with the public do not fall within the purview of Article 3 of the ELCRA's definition of "public service." The why is simple—that part of prisons that houses prisoners does not provide a public service as defined in the Act. Prisoners do not perform a public service; they do not deal with the public. Additionally, that part of prisons that houses prisoners was not intended to interact with the public. In fact, it is just the opposite; prisoners by their own behaviors are a tremendous burden on society. Hence, prisoners do not fall within the purview of Article 3 of the ELCRA.

Plaintiffs claim that they are being denied the right of access to the courts. Plaintiffs cite *Furman v Georgia*, 408 US 238, 290; 92 S Ct 2726; 33 L Ed 2d 346 (1972) (BRENNAN, J., concurring), for the proposition that prisoners retain a fundamental "right of access to the courts." No doubt that access to the courts is a fundamental right, but the 1999 amendment's purpose was to define the scope of the term "public service," not to deny anyone access to the courts. This lawsuit is exhibit one that plaintiffs have not been denied access to the courts.

Because the Legislature drafted the ELCRA, it can and should clearly define the scope of its own statutory enactment. Despite this, the majority not only usurps the prerogative that our Constitution grants the Legislature in this context of defining the scope of the amendment but then proceeds to strike down the Legislature's definition of the scope of Article 3's definition of "public service."

-11-

## IV.  PLAINTIFFS' FAILURE TO SET FORTH A COGNIZABLE CAUSE OF ACTION UNDER MICHIGAN'S CIVIL RIGHTS ACT

This case does not require this Court to declare an act of the Legislature unconstitutional. Courts must avoid constitutional issues if a case can be resolved on the basis of statutory interpretation. *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 455; 688 NW2d 523 (2004).  I believe this case can be resolved on statutory grounds.  There is no need to interfere with the responsibilities of another branch of government.

### A.  WHAT THIS CASE IS NOT ABOUT

Prior to addressing the substance of plaintiffs' allegations, this Court has the responsibility of deciding if plaintiffs' cause of action is cognizable under Article 3 of the ELCRA.  Plaintiffs' sophisticated complaint is similar to a Gordian knot that must be unwound to fully understand the gravity of plaintiffs' allegations.  Before engaging in an analysis of plaintiffs' allegations, for *clarification* purposes, it may be easier to state what principles are not involved in the present case.

First:  Plaintiffs' complaint does not allege a constitutional tort.  Our Supreme Court has defined a constitutional tort as an allegation "that the state, by virtue of custom or policy, has violated a right conferred by the Michigan constitution . . . ."  *Smith v Dep't of Public Health*, 428 Mich 540, 544; 410 NW2d 749 (1987), aff'd sub nom *Will*, 491 US 58.  Plaintiffs do not allege a cause of action under Michigan's Equal Protection Clause, Const 1963, art 1, § 2.  It should also be noted that had plaintiffs filed an action under Const 1963, art 1, § 2, plaintiffs would not be entitled to money damages.  See *Sharp v Lansing*, 464 Mich 792, 800 n 9; 629 NW2d 873 (2001).  Our Supreme Court has declined to infer a damages remedy from the Equal Protection Clause because the authority to allow money damages for an equal protection violation belongs to the Legislature.  *Lewis v Michigan*, 464 Mich 781, 786-789; 629 NW2d 868 (2001).

Second:  Plaintiffs' complaint does not allege a cause of action under the United States Constitution's Equal Protection Clause, US Const, Am XIV.  Nor do plaintiffs allege a constitutional claim under the Eighth Amendment of the United States Constitution.  See *Carlton v Dep't of Corrections*, 215 Mich App 490, 502-504; 546 NW2d 671 (1996).  Furthermore, the state and its officials acting in their official capacity cannot be sued for monetary damages under 42 USC 1983.  See *Will*, 491 US at 71.  Also, states are immune "from suit in state and federal courts." *Ernst v Rising*, 427 F3d 351, 358 (CA6, 2005).[6]

---

[6] The Sixth Circuit neatly summarized the source and scope of sovereign immunity:

> From birth, the States and the Federal Government have possessed certain immunities from suit in state and federal courts.  For the Federal Government, that immunity flows not from any one provision in the Constitution but is derived by implication from the nature of sovereignty itself.  For the States, that immunity

Third:  Plaintiffs do not allege that the state defendants committed any traditional torts. To impose tort liability on a state official, the official must be "the proximate cause" of the injury, "meaning the one most immediate, efficient, and direct cause preceding an injury." *Robinson v Detroit*, 462 Mich 439, 458-459; 613 NW2d 307 (2000).  Plaintiffs do not allege in their complaint that the named defendants, in their official capacity or in their individual capacity, committed any traditional torts.

Fourth:  Plaintiffs do not allege that this case is an employment action under Article 2 of the ELCRA.  Plaintiffs' complaint does a nice job at attempting to conflate an Article 2 employment cause of action with an Article 3 public service cause of action, but, suffice it to say, no Michigan cases have recognized such a conflated cause of action.  The fact that prisons are a hostile environment, or as plaintiffs state, a sexually hostile prison environment, has never been recognized as an Article 3 cause of action in a published case.

Fifth:  Plaintiffs do not allege that the ELCRA is co-extensive with Michigan's equal protection clause.  The ELCRA is best described as a codification of the equal protection clause but "broadened to include categories not covered under the constitution, such as age, sex and marital status."  *Neal II*, 232 Mich App at 739.[7]  For this reason, the trial court's and plaintiffs' citation to *Mason v Granholm*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued January 23, 2007 (Docket No. 05-73943), is misguided. *Mason*'s other conclusion "that the 1999 amendment was not curative" is also wrong.  The amendment's enabling act explicitly provides, in plain English, that the 1999 amendment "is curative and intended to correct any misinterpretation of legislative intent in the court of appeals decision [*Neal II*,]" 1999 PA 202, enacting § 1.  The enabling act stated the Legislature's "original intent . . . that an individual serving a sentence of imprisonment in a state or county correctional facility is not within the purview of this act."  *Id*.  Ironically, if they were co-extensive, plaintiffs may not be entitled to monetary damages.

But, if plaintiffs can *artfully* allege a valid public service claim under Article 3 of the ELCRA, they would be entitled to monetary damages.  See *Hamed,* 490 Mich at 29 n 74.  At

_____

flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution.  The States' immunity from suits in federal court applies to claims against a State by citizens of the same State as well as to claims against a State by citizens of another State.  The immunity also applies to actions against state officials sued in their official capacity for money damages.  [*Ernst*, 427 F3d at 358 (citations and quotation marks omitted).]

[7] Although *Neal II* stated that the ELCRA was co-extensive with Michigan's Equal Protection Clause, *Neal II* quickly corrected itself to describe ELCRA as a codification of the Equal Protection clause but broadened to include classifications not included in the Constitution.  See *Neal II*, 232 Mich App at 739.

issue in this case is whether such a cause of action exists under Michigan law and whether plaintiffs' complaint has set forth such a cause of action.[8]

## B. SEXUALLY HOSTILE PRISON ENVIRONMENT

In their complaint, plaintiffs allege that defendants' "acts and omissions constitute sexual harassment and violate Plaintiffs' rights under the ELCRA[.]" The ELCRA's definition of sexual harassment underscores a fatal flaw with plaintiffs' case. The ELCRA defines sexual harassment as follows:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i).]

Nothing in plaintiffs' complaint alleges, either explicitly or implicitly, that a term or condition of plaintiffs' receipt of public services is submission to conduct or communication of

---

[8] In this regard, plaintiffs' attorneys are a creative lot. They are attempting to create causes of action that have never previously existed or been recognized by existing law. In my opinion, courts should act as gatekeepers and scrutinize these complaints to determine if the alleged (manufactured) constitutional torts (civil rights torts) have any basis in law or fact or if they are subsumed by statutory claims. See *Mays v Governor*, ___ Mich App ___; ___ NW2d ___ (2018) (Docket Nos. 335555, 335725, 335726), and *Boler v Earley*, 865 F3d 391 (CA6, 2017).

In the present case, alleging that prisons are a "sexually hostile prison environment" as a basis for a cause of action against state officials is nonsensical. Prisons house murderers, rapists, pedophiles, and individuals who have established that they cannot conform to society's minimum standards of behavior or accountability. Plaintiffs suggest that we reward *all* prisoners for their involuntary participation in "a sexually hostile prison environment." *No amount of governmental oversight can change prisons into a nonhostile environment.*

a sexual nature. In addition, plaintiffs' complaint fails to allege that these state defendants committed any "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature" in the provision of public services.

Moreover, the vast majority of *hostile environment* civil rights act cases involve employment cases under Article 2 of the ELCRA. Plaintiffs have not cited a published *hostile environment* case that involves a prison setting as it relates to the term "public services" as found in Article 3 of the ELCRA. No such case exists. I conclude that no reason exists to extend *hostile environment* cases beyond employment cases. For that reason alone, plaintiffs' complaint fails to state a *hostile environment* cause of action under Article 3 of the ELCRA.

If plaintiffs are correct, then every single prisoner in the State of Michigan can sue the state for being placed in a sexually hostile prison environment. I for one will not be the first judge to extend the hostile environment line of cases to state prisons. That is a public policy question best left to the Legislature or the Supreme Court.

## C. AGE DISCRIMINATION

Plaintiffs allege that the state's customs and policies discriminated against youthful offenders, but, when read in context, plaintiffs' actual complaint is that the state defendants should have treated youthful offenders differently than non-youthful offenders. The difficulty with such a cause of action is that Article 3 of the ELCRA does not impose any affirmative duties upon these state defendants to draft new policies. The only duty imposed by Article 3 is that the state shall not discriminate when delivering public services. Plaintiffs' complaint is devoid of any allegations that the state or its officials affirmatively discriminated against these youthful offenders when delivering a public service. In short, plaintiffs want this Court to recognize an Article 3 cause of action for failing to treat prisoners differently.

Defendants cannot be liable under Article 3 of the ELCRA just because there may be a better way to achieve a goal or a better way to run a prison. No Michigan case law and no statutory language support the concept that failure to institute different policies, customs, or practices can provide a basis for imposing liability on a governmental agency. See *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 181-184; 615 NW2d 702 (2000) (holding that the "highway exception" to governmental immunity does not impose a duty on the state or county road commissions "to install additional traffic signs or signals that might conceivably have made the intersection safer"). While, as in this case, a decision to adopt new policies, customs, or practices may be prudent and advisable, those decisions are best left to the executive or legislative branch. Article 3 of the ELCRA does not provide a cause of action for such a claim. These state defendants did not deny these plaintiffs a public service on the basis of plaintiffs' age or other suspect classification or as a term or condition of getting a specific public service.

## D. OTHER REMEDIES

It is important to note that plaintiffs are not left without a remedy if this Court determines that plaintiffs' claims do not fall within the scope of Article 3 of the ELCRA. Youthful offenders and other prisoners have remedies under statutory enactments and other provisions of the Michigan Constitution, including the Equal Protection Clause, 1963 Const, art 1, § 2. The

-15-

Equal Protection Clause does not carry a damages remedy, however, because the authority to allow money damages for an equal protection violation belongs to the Legislature.

To be candid, the hidden issue in this case is monetary damages. Plaintiffs have filed a claim in federal court, in part, alleging violations of 42 USC 1983. Plaintiffs' attorney admits that "monetary damages" are not available in federal court because "federal rules bar the collection of damages from the state or state agencies." Hence, plaintiffs have filed a duplicate action in state court alleging a violation of Article 3 of the ELCRA. [9] Plaintiffs' only avenue to collect monetary damages against the state or state agencies is to awkwardly attempt to fit their claim into an ELCRA action, but plaintiffs' cause of action does not fit into the scriptures of an Article 3 civil rights violation.

Plaintiffs allege egregious acts perpetrated against them by third parties that, if true, are significant and deserve remediation under the law. However, the remedy is not for this Court, based upon a visceral response, to reengineer the law to discard governmental immunity for state actors or to conclude that prisoners and non-prisoners are similarly situated for purposes of an equal protection argument.

## V. CONCLUSION

In essence, plaintiffs seek money damages against the state for failing to institute better safeguards in prison. But plaintiffs have not pleaded in avoidance of governmental immunity. Furthermore, this case can be decided on statutory grounds. There is no need to declare 1999 PA 202 unconstitutional. Even if I were to decide this case on constitutional grounds, plaintiffs make no claim that they were treated differently than a similarly situated class of prisoners. Prisoners and non-prisoners are not members of the same class for purposes of this lawsuit. Plaintiffs' actual claim is that the state should have discriminated in favor of youthful offenders. That claim is a policy decision for the executive branch or the legislative branch to resolve. Because of the separation of powers doctrine, courts should not be involved in the day-to-day operation of the duties or responsibilities of other branches of government.[10]

---

[9] See http://www.bridgemi.com/children-families/are-teen-prison-rapes-violation-civil-rights-michigan-court-about-decide.

[10] When the ELCRA was drafted by the Legislature in 1977, its central purpose was to define the term *civil rights* as it is applicable to the public. As such, the ELCRA sets the parameters and guidelines for eligible civil rights claims that were not originally included in the Michigan Constitution.

In 1977, and again in 1999, the Legislature decided that prisons and prisoners are not within the scope of Article 3 causes of action. It must be emphasized that prisoners are not entitled to the same freedoms as non-prisoners. I doubt if any prisoner would refer to his jail cell as a "public accommodation" in the same manner that a non-incarcerated individual refers to a stay at a Holiday Inn, or that any prisoner would claim that a prison is performing a *public service* by

The truth of the matter is that prisons are a dangerous place. No matter what rules, customs, practices or policies are instituted in state prisons, the state cannot prevent all misdeeds by perpetrators of criminal behavior. The majority's desire to cure all wrongs by eviscerating the doctrine of governmental immunity, while well-intentioned, is fraught with the law of unintended consequences. Depriving governmental officials of governmental immunity when making policy decisions, when making sentencing decisions, and when running the government, would certainly cause most of us to rethink the traditional notion of public service.

For the reasons stated in this opinion, I would reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.

/s/ Peter D. O'Connell

---

involuntary incarcerating him. I simply note it is the Legislature that has the responsibility to define the scope of the ELCRA.

Plaintiffs can still bring a cause of action under Articles 1, 2, 4, 5, and 6 of the ELCRA. Plaintiffs are not being denied their civil right, as they claim, to bring a cause of action under the ELCRA. The issue in this case is very narrow. Simply stated, prisons and prisoners do not provide a *public service* as that term is defined by the Legislature in Article 3 of the ELCRA.