# Order

Michigan Supreme Court
Lansing, Michigan

June 14, 2019

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

157729-31

JOHN DOES 11-18, JANE DOE 1, and all
others similarly situated,
        Plaintiffs-Appellees,

v

    SC:  157729
    COA:  332536
    Washtenaw CC:  13-001196-CZ

DEPARTMENT OF CORRECTIONS,
GOVERNOR, FORMER DIRECTOR
DEPARTMENT OF CORRECTIONS, FORMER
DEPUTY DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER CHIEF DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER WARDEN OF
CHARLES EGELER RECEPTION AND
GUIDANCE CENTER, FORMER WARDEN OF
EARNEST C. BROOKS CORRECTIONAL
FACILITY, FORMER WARDEN OF RICHARD
A. HANDLON CORRECTIONAL FACILITY,
FORMER WARDEN OF RICHARD A.
HANDLON CORRECTIONAL FACILITY,
FORMER WARDEN OF OAKS
CORRECTIONAL FACILITY, FORMER
WARDEN OF THUMB CORRECTIONAL
FACILITY, FORMER WARDEN OF
CHIPPEWA CORRECTIONAL FACILITY,
WARDEN OF KINROSS CORRECTIONAL
FACILITY, FORMER WARDEN OF
NEWBERRY CORRECTIONAL FACILITY, and
FORMER WARDEN OF MICHIGAN
REFORMATORY CORRECTIONAL FACILITY,
        Defendants-Appellants.

_____/

JOHN DOES 1-10 and all others similarly situated,
        Plaintiffs-Appellees,

v

    SC:  157730
    COA:  335440
    Washtenaw CC:  15-001006-CZ

DEPARTMENT OF CORRECTIONS,
GOVERNOR, DIRECTOR DEPARTMENT OF
CORRECTIONS, FORMER DIRECTOR

DEPARTMENT OF CORRECTIONS, DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER CHIEF DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, WARDEN OF IONIA CORRECTIONAL FACILITY, FORMER WARDEN OF E. C. BROOKS CORRECTIONAL FACILITY, FORMER WARDEN OF GUS HARRISON CORRECTIONAL FACILITY, FORMER WARDEN OF RICHARD A. HANDLON CORRECTIONAL FACILITY, FORMER WARDEN OF RICHARD A. HANDLON CORRECTIONAL FACILITY, FORMER WARDEN OF CARSON CITY CORRECTIONAL FACILITY, FORMER WARDEN OF OAKS CORRECTIONAL FACILITY, FORMER WARDEN OF OAKS CORRECTIONAL FACILITY, FORMER WARDEN OF THUMB CORRECTIONAL FACILITY, FORMER WARDEN OF CHIPPEWA CORRECTIONAL FACILITY, FORMER WARDEN OF MARQUETTE CORRECTIONAL FACILITY, WARDEN OF BELLAMY CREEK CORRECTIONAL FACILITY, WARDEN OF KINROSS CORRECTIONAL FACILITY, FORMER WARDEN OF NEWBERRY CORRECTIONAL FACILITY, FORMER WARDEN OF WOMEN'S HURON VALLEY CORRECTIONAL FACILITY, FORMER WARDEN OF WOMEN'S HURON VALLEY CORRECTIONAL FACILITY, FORMER WARDEN OF MICHIGAN REFORMATORY, and WARDEN OF SAGINAW CORRECTIONAL FACILITY,

          Defendants-Appellants.

_____/

JOHN DOES 1-10 and all others similarly situated,
          Plaintiffs-Appellees,

v

DEPARTMENT OF CORRECTIONS, GOVERNOR, DIRECTOR DEPARTMENT OF CORRECTIONS, FORMER DIRECTOR

SC: 157731
COA: 335527
Washtenaw CC: 15-001006-CZ

DEPARTMENT OF CORRECTIONS, DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER CHIEF DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, WARDEN OF IONIA CORRECTIONAL FACILITY, FORMER WARDEN OF E. C. BROOKS CORRECTIONAL FACILITY, FORMER WARDEN OF GUS HARRISON CORRECTIONAL FACILITY, FORMER WARDEN OF RICHARD A. HANDLON CORRECTIONAL FACILITY, FORMER WARDEN OF RICHARD A. HANDLON CORRECTIONAL FACILITY, FORMER WARDEN OF CARSON CITY CORRECTIONAL FACILITY, FORMER WARDEN OF OAKS CORRECTIONAL FACILITY, FORMER WARDEN OF OAKS CORRECTIONAL FACILITY, FORMER WARDEN OF THUMB CORRECTIONAL FACILITY, FORMER WARDEN OF CHIPPEWA CORRECTIONAL FACILITY, FORMER WARDEN OF MARQUETTE CORRECTIONAL FACILITY, WARDEN OF BELLAMY CREEK CORRECTIONAL FACILITY, WARDEN OF KINROSS CORRECTIONAL FACILITY, FORMER WARDEN OF NEWBERRY CORRECTIONAL FACILITY, FORMER WARDEN OF WOMEN'S HURON VALLEY CORRECTIONAL FACILITY, FORMER WARDEN OF WOMEN'S HURON VALLEY CORRECTIONAL FACILITY, FORMER WARDEN OF MICHIGAN REFORMATORY, and WARDEN OF SAGINAW CORRECTIONAL FACILITY,

        Defendants-Appellants.

_____/

On order of the Court, the application for leave to appeal the March 27, 2018 judgment of the Court of Appeals is considered, and it is DENIED, there being no majority in favor of granting leave to appeal or taking other action.

ZAHRA, J. (*dissenting*).

I would grant the application in these two consolidated class actions.

These consolidated cases feature a long and protracted legal history that has yet to include any substantive review by this Court. Plaintiffs represent juvenile prisoners who claim that they were subjected to sexual assaults, sexual harassment, and degrading treatment by prison staff and adult prisoners. Plaintiffs, who are mostly juvenile male inmates serving terms of imprisonment in the custody of the Department of Corrections (DOC) brought claims against the Governor, the DOC, the former and current heads of the DOC, and many prison wardens. Plaintiffs alleged violations of the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, for sexual assaults, a sexually hostile prison environment, age discrimination, and other claims arising from the DOC's alleged failure to segregate them from adult prisoners and failure to report abuse or neglect.

In *Neal v Dep't of Corrections* (*On Rehearing*),[1] the Court of Appeals concluded that prisons were not excluded from the definition of "public service." In response, the Legislature amended the CRA in 1990. "Enacting section 1" provides:

> This amendatory act is curative and intended to correct any misinterpretation of legislative intent in the court of appeals decision Neal v Department of Corrections, 232 Mich App 730 (1998). This legislation further expresses the original intent of the legislature that an individual serving a sentence of imprisonment in a state or county correctional facility is not within the purview of this act.[2]

The amendment redefined "public service" to add the italicized phrase:

> a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, *except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment.*[3]

This amendment plays a critical role in these cases.

---

[1] *Neal v Dep't of Corrections* (*On Rehearing*), 232 Mich App 730 (1998), superseded in part by 1999 PA 202.

[2] 1999 PA 202.

[3] MCL 37.2301(b) (emphasis added).

In *Doe v Dep't of Corrections*,[4] a split panel of the Court of Appeals held that defendants were entitled to summary disposition for failure to comply with the disclosure requirements of the prison litigation reform act (PLRA), MCL 600.5501 *et seq.*, and that plaintiffs could not amend their complaint to cure the defect.[5]  The majority also concluded that the challenged provisions of the CRA did not violate the right to equal protection.[6]  Judge BECKERING dissented, asserting that the amendment of the CRA violated Michigan's Equal Protection Clause.[7]  Plaintiffs sought leave to appeal, and this

---

[4] *Doe v Dep't of Corrections*, 312 Mich App 97 (2015), vacated in part 499 Mich 886 (2016).

[5] *Id*. at 112-114, 138.

[6] *Id*. at 136.

[7] The dissent emphasized the following terms in Michigan's Equal Protection Clause:

> "*No person* shall be denied the equal protection of the laws; nor shall *any person* be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin.  The legislature *shall implement* this section by appropriate legislation."  [*Doe*, 312 Mich App at 145 (BECKERING, J., dissenting), quoting Const 1963, art 1, § 2.]

The dissent noted that the use of the singular within the clause demonstrated that it was "unquestionably the intent of the ratifiers that civil rights protections be extended to *any* and *all* persons." *Doe*, 312 Mich App at 145 (BECKERING, J., dissenting).  The dissent further stated that, under the second sentence, the Legislature was constitutionally mandated to implement protection to any and all persons and lacked authority to exclude anyone.  *Id.* at 146-147.  In response to that mandate, the Legislature enacted the CRA, which also contains the singular: "a person shall not '[d]eny an individual . . . .' " *Id.* at 147, quoting MCL 37.2302(a).

The dissent also noted that following *Neal (On Rehearing)*, the Legislature amended the statute and, in so doing, violated its constitutional mandate.  *Doe*, 312 Mich App at 148-149 (BECKERING, J., dissenting).  The dissent explained:

> The parties and the majority frame the issue at hand as one calling for a determination of whether the 1999 amendment to the [CRA] violates equal protection by denying prisoners, as a class, protections under the [CRA].  In my opinion, this focus is directed at the wrong section of Const 1963, art 1, § 2.  I believe that the analysis misses a more significant and dispositive issue.  That is, whether the Legislature has authority, given the constitutional directive in Const 1963, art 1, § 2 pertaining to *all citizens*, to carve out a particular class of individuals and exclude them from the protections of the [CRA].

Court vacated the Court of Appeals' constitutional analysis regarding equal protection, observing: "In light of the Court of Appeals ruling that plaintiffs' complaint should be dismissed under the [PLRA], it was unnecessary to resolve the remaining issues."[8] The matter was remanded to the trial court where some but not all of plaintiffs' claims were dismissed. Defendant again moved for summary disposition, and the court again denied the motion, ruling that the CRA's 1999 amendment excluding prisoners from its purview violated equal protection and was unconstitutional. The court also denied defendants' claim of governmental immunity on the CRA claims.

Defendant appealed. The Court of Appeals affirmed in a split decision, adopting the constitutional analysis set forth in Judge BECKERING's dissent in the prior appeal.[9] Judge O'CONNELL issued a sharp dissent. He conducted a "traditional constitutional analysis" and concluded there was obviously a rational basis for the Legislature to exclude prisoners from the CRA.[10] He questioned the majority's approach, wondering

> I would hold that the Legislature acted outside of its constitutional authority by removing prisoners from the scope of the [CRA] and thereby denying protection to all. Where the analysis in this case should start, and end, in my opinion, is with the idea that Const 1963, art 1, § 2 contains more than just the guarantee of equal protection of the laws; it contains a directive to the Legislature to implement legislation that protects the rights of *all* citizens.
>
> * * *
>
> . . . [T]he Legislature is not permitted, pursuant to the implementation language contained in Const 1963, art 1, § 2, to define the persons to whom civil rights are guaranteed. The Constitution already answers that question, unequivocally guaranteeing that legislation to protect civil rights must be extended to all, without reservation or limitation. Any implementation language contained in Const 1963, art 1, § 2 should not be construed as giving the Legislature "the authority to circumvent the protections that the section guarantees." See *Midland Cogeneration* [*Venture Ltd Partnership v Naftaly*], 489 Mich [83, 95 (2011)]. If it did, just as the Court cautioned in *Midland Cogeneration*, the protection of "any person" would "lose [its] strength" and the Legislature would render such protection meaningless. See *id.* Consequently, I would hold that the 1999 amendment, by eradicating a constitutional guarantee, violates Const 1963, art 1, § 2. [*Id.* at 149-150, 153-154.]

[8] *Doe*, 499 Mich at 886.

[9] *Does 11-18 v Dep't of Corrections (After Remand)*, 323 Mich App 479 (2018).

[10] *Id.* at 500-503 (O'CONNELL, P.J., dissenting).

"what, if any, law would pass such a contrived test . . . ."[11] He also identified the primary error of the majority opinion as its adoption of plaintiffs' assertion that prisoners and nonprisoners are similarly situated in all aspects of this case. He concluded that "[p]risoners and nonprisoners have never been similarly situated, are not currently similarly situated, and hopefully will never be similarly situated. That a rational basis exists for treating prisoners differently from free citizens is obvious."[12] He explained that "the deterrence of meritless lawsuits and the preservation of scarce resources through the reduction of costs associated with resolving those lawsuits reflects a legitimate government interest,"[13] stating:

> Prisoners file an unprecedented number of lawsuits, and the cost to the state has skyrocketed. In one instance, a prisoner has filed 5,813 lawsuits and counting. The Legislature recognized that including prisons in the definition of "public service," MCL 37.2301(b), is problematic. Prisoners could sue for the loss of their right to vote or for the loss of their Second Amendment right to carry a gun in prison.[14]

The stark contrast between the opinions of Judge O'CONNELL and Judge BECKERING speaks volumes as to why leave to appeal should be granted in the instant case. This Court should have the final word on this significant issue of Michigan constitutional law.[15]

---

[11] *Id*. at 501.

[12] *Id*.

[13] *Id*. at 501-502 (quotation marks and citation omitted).

[14] *Id*. at 502.

[15] Regardless of whether the Court of Appeals reached the correct result, its reasoning was highly questionable. In ruling that the amendment of the CRA violated Const 1963, art 1, § 2, the Court of Appeals relied solely on the implementation clause of that provision, which states that "[t]he legislature shall implement this section by appropriate legislation." See *Does 11-18*, 323 Mich App at 488-489. By doing so, the Court of Appeals ruled that there was an equal-protection violation without engaging in an equal-protection analysis. See *id*. That is, the Court of Appeals failed to apply the rational-basis standard (or any other standard of review recognized by the courts, for that matter) in addressing plaintiffs' equal-protection claim. The Court of Appeals' reasoning in this regard strikes me as a quite peculiar deviation from decades of equal-protection caselaw and would seem to warrant our review, particularly because "[t]his Court has held that Michigan's equal protection provision is coextensive with the Equal Protection Clause of the United States Constitution." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318 (2010).

Further, the Court of Appeals majority's conclusion that Article 3 of the CRA operates as a waiver of governmental immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., presents great tension if not outright conflict with this Court's opinion in *Hamed v Wayne Co*.[16]  There, we addressed "whether Wayne County and its sheriff's department may be held vicariously liable for a civil rights claim under MCL 37.2103(i) based on a criminal act of a deputy sheriff committed during working hours but plainly beyond the scope of his employment."[17]  In doing so, the Court cautioned:

> Artful pleading would also allow a plaintiff to avoid governmental immunity under the [GTLA].  A school district, for example, could not be vicariously liable in tort for a teacher's sexual molestation of a student because the GTLA would bar the claim.  However, if the plaintiff styled its claim as a CRA action, the school district could be vicariously liable under a theory of quid pro quo sexual harassment affecting public services.  Plaintiff's preferred approach, under which public-service providers would be strictly liable for *precisely the same conduct* as that for which they would typically be immune, is inherently inconsistent with the Legislature's intent.  If the Legislature had intended such a result, it should have clearly abrogated the common-law rule for purposes of the CRA.[18]

As pointed out by Judge O'CONNELL, "*Hamed* clearly holds that plaintiffs cannot avoid the GTLA by simply alleging a violation of the [CRA]."[19]  And yet, "to their innovative credit," plaintiffs appear to "have artfully pleaded a cause of action exactly as the *Hamed* Court cautioned should not be done."[20]

In sum, the instant case presents two questions of great jurisprudential significance that this Court should resolve.  I would grant the application for leave to appeal.

MARKMAN, J., joins the statement of ZAHRA, J.

---

[16] *Hamed v Wayne Co*, 490 Mich 1 (2011).

[17] *Id*. at 5.

[18] *Id*. at 29 n 74.

[19] *Does 11-18*, 323 Mich App at 495 (O'CONNELL, P.J., dissenting).

[20] *Id*. (emphasis omitted).

CLEMENT, J., did not participate due to her prior involvement as chief legal counsel for the Governor.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 14, 2019



Clerk

s0611